### 46697. FOX v. LIBERTY MUTUAL INSURANCE COMPANY et al.

Clark, Judge. In this workmen's compensation case the superior court set aside the award of the full board and entered judgment for the employer and insurer. The court's order states "there is not sufficient competent evidence in the record to warrant the award and that the award is contrary to law." The claimant appeals from the order and enumerates the same as error.

The findings of fact and award of the deputy director who conducted the hearing were adopted without change by the full board.

There was evidence that the claimant was about 32 years old; that his job involved extremely heavy manual labor; that on September 15 or 16, 1969, he encountered sudden and severe pain in his neck; that he immediately made a phone call to his doctor for an appointment; that he saw his doctor on September 20, 1969; and that from that date claimant could not perform his job.

Claimant's physician testified the claimant complained of pain in his left shoulder and numbness in the fingers of

his left hand; that examination showed diminished tricep reflex and numbness in part of the hand that involved the small finger and the ring finger. He further testified that he diagnosed either nerve-root compression or neuritis or inflammation of the nerve; that a myelogram revealed a defect between C-6, C-7 vertebras consistent with herniated disc. A cervical laminectomy was performed; "he had a hard calcified disc . . . the nerve-root was decompressed."

When asked whether the type of labor done by claimant over an extended period of time would have contributed to the ruptured disc, the physician testified: "Anything is possible. I'd just say it's a possibility that's all I could say. Anything can cause it. As you know discs herniate primarily because they degenerate. It's a process of aging that any amount of trauma any slight amount or great amount would herniate a ruptured disc, and pick the specific incident that caused it, I don't see how you gonna do it. He was able to do that work without any specific injury related to his lifting that I can determine."

The physician further testified: "Q. In your opinion it's possible that it could have contributed to this particular disc in the cervical spine? A. It's possible. Anything is possible. Some other things could have caused it too. . . . Q. [Y]ou found a hard rather than a soft disc? A. That's correct. Q. What is the significance of that, if any, doctor? A. Well, soft disc is when it ruptures acutely and has not had a chance to calcify. Hard disc is when there's a tear in the ligament, a bulge in the disc and that calcifies and then there's another strain on the neck and that further bulges out then becomes calcified. It occurs over a much longer period of time than acute soft disc does. Q. And this was a hard calcified disc? A. That's correct. Q. Were you able to form any opinion as to the inception of it? A. No, no definite period . . . Q. When did Mr. Fox tell you that he was hurt—felt pain and difficulty up there? A. Well, I saw him on the 20th of September, and he told me he was having a little pain in

his left shoulder and arm, numbness in the fingers. This started the Monday before . . . Q. All right. Now, the Monday before is when his difficulty started, doctor. Do you have an opinion as to whether or not the disc had herniated at that time or had ruptured at that time? A. Well, he already had the process going as shown by the myelogram and subsequent operation that it was calcified. He already had that at the time, yeah. Q. What would have brought on the pain at that particular time? A. Well, it's like the straw that broke the camel's back. I mean, just that calcium kept adding and adding, finally it came to the point where it caused pressure on the nerve . . . Q. What—do you have an opinion as to what effect continuous physical effort and strain applied to this condition of the spine— A. It tends to make it worse, up to the point where it causes symptoms. Q. Well, physical effort then over a period of time would have, would it tend to aggravate this situation that you have described in the cervical spine? A. It would if it produced symptoms, yes . . . Q. Doctor, the straw that broke the camel's back could be their aging too, could it not? A. That is right . . . Q. Do I understand, sir, correctly, that this man had a cervical disc that ruptured, then it calcified? A. Well, didn't rupture only once. What happens is there's a ligament that connects the two vertebras like this and that tears on exertion or motion of the neck, and where there's a little tear in the ligament calcium builds up. This is a repeated process, finally gets where you get a nice big lump right over where the disc herniates and irritates that ligament . . ." *Held:*

In short, the physician's testimony was not definite. It was to the effect that the claimant's work *could* have caused the condition or aggravated it. On the other hand, "some other things could have caused it too."

There need not be positive unequivocal expert testimony to support a claim. " 'The opinions of experts that the exertion shown by the evidence to exist *would be sufficient* is also sufficient to authorize a finding on the part of the

fact finding tribunal that it did.' *Hoffman v. National Surety Corp.,* 91 Ga. App. 414, 417 (85 SE2d 784); *J. D. Jewell, Inc. v. Peck,* 116 Ga. App. 405, 406 (157 SE2d 806)." (Emphasis supplied). *Cox v. Employers Mut. Liab. Ins. Co.,* 122 Ga. App. 659 (178 SE2d 287).

The evidence would have authorized a finding that the condition was due to natural degeneration or aging. But the testimony of the claimant and the physician also sufficiently supports the finding which the deputy director and full board in fact made, to wit:

"[T]he claimant's condition is the result of repeated tears in the ligament connecting the vertebra and calcium building up after each tear. I find also that the tearing of the ligament was caused by continuous heavy lifting on his job over a period of time and that his employment contributed to his injury."

If employment contributes to injury it is an accident and is compensable. *Lumbermen's Mut. Cas. Co. v. Griggs,* 190 Ga. 277 (9 SE2d 84); *Fidelity & Cas. Co. v. Adams,* 70 Ga. App. 297, 298 (28 SE2d 79). There is ample evidence in the record to support the findings of fact and award of the full board. Neither the superior court nor any other reviewing court has any authority to decide that the weight of the evidence is contrary to the award. Any competent supporting evidence is all that is required. *Davis v. Fireman's Fund Ins. Co.,* 106 Ga. App. 519, 522 (127 SE2d 481); *U. S. Cas. Co. v. Young,* 104 Ga. App. 373 (121 SE2d 680). The courts on appeal are bound by the findings of the Board of Workmen's Compensation if supported by any evidence. *General Fire &c. Co. v. Bellflower,* 123 Ga. App. 864, 866 (182 SE2d 678); *Thomas v. U. S. Cas. Co.,* 218 Ga. 493 (128 SE2d 749).

The lower court erred in reversing the findings and award of the Board of Workmen's Compensation.

*Judgment reversed. Hall, P. J., and Eberhardt, J., concur.*
Submitted November 3, 1971—Decided January 13, 1972.

*Jay M. Sawilowsky,* for appellant.
*Fulcher, Hagler, Harper & Reed, William C. Reed,* for appellees.