## 48672. SIMPKINS v. UNIGARD MUTUAL INSURANCE COMPANY et al.

CLARK, Judge. Once again we are confronted with the necessity of deciding if certain arrangements agreed upon between parties create a master-employee or an independent contractor relationship. Additionally, we must decide in this case if an estoppel existed whereby the insurer is prevented from denying workmen's compensation coverage.

Sanders was a small building contractor whose business consisted of building residences for resale purposes on land owned by him. His method of operation was to contract with independent concerns and individuals for the various items and work needed to complete the construction of each edifice. Thus, he orally agreed with Simpkins for the latter to do the cornice work and installation of siding on the building then being constructed. He

agreed to pay a specific amount per foot to run the cornice work and $22 per square for siding. On the instant job he also agreed for Simpkins to do certain work on the gables which had not been completed by the subcontractor who was framing the house. He expressly denied he was to pay an hourly price for the work that Simpkins was to perform in completing the gables, acknowledging he would have been obligated to pay such price for that extra work as was charged to him at its completion. In fact a disagreement occurred as to the amount owed which dispute was settled by negotiation.

Simpkins had been working on the house only two days when he was injured as a result of a fall from a scaffold. The work was thereafter completed by a stepson who worked with Simpkins. When the work was completed Simpkins submitted a statement for the entire job and directed that two checks be issued. The total statement was $952.75. Simpkins directed that his bill be paid through two checks, one to his stepson for $543.75 and the balance of $409 to be paid to him. At the time of his injury $409 worth of work had not been done.

Sanders furnished the material and had the right to choose the kind of siding that he desired. (R. 23). He stated he did not have the right to control the time, manner or method of executing the work but had the right only to require certain results. He did not have the right to require Simpkins to remove work that had been performed if he did not like it and have it done again in accordance with new instructions. (R. 24). Nor did he have the right to hire additional men to speed up the job he had contracted for Simpkins to perform. "When we agree on a job, as far as I am concerned, that is his job until it's completed." (R. 25).

With reference to discharging an incompetent employee of the subcontractor Sanders testified "He has control over who he hires, and, of course, I wouldn't go out on the job and talk to this guy when I hired someone else to do the job. I would talk to the man I hired, the man I had the agreement with." (R. 26). This confirmed an earlier statement that he had no right of control over the subcontractor's employees.

With reference to the right of control over the work Sanders testified that he did not have such right pointing out that each siding contractor has his own system "and I wouldn't have the authority to alter his system." (R. 29). He further stated "The only thing I am concerned with is the end product, how the men put it up I don't care so long as it looks right after it's finished."

(R. 29).

There was no withholding of income tax or social security or any control over either the number of men or the hours of work.

Simpkins considered himself to be a subcontractor and self-employed. (R. 52).

In a discovery deposition Sanders testified that he had the right to change the type of siding if he became dissatisfied with it during the course of the job. (Sanders' deposition, p. 18). He also had the right to terminate the contract if at any time he became dissatisfied with the quality of the work (Sanders' deposition, p. 20); and also a certain amount of supervision in that on one occasion Simpkins was instructed to use a different type of nail (Simpkins' deposition, p. 16); and on another occasion was told to take down some siding which he had installed (Simpkins' deposition, p. 12).

When the accident occurred Sanders took Simpkins to the hospital and assumed the medical expenses because of his belief that the Unigard Mutual Insurance Company policy which he had obtained covered the injured man. It later developed there was no coverage provided in the absence of a deduction of a percentage of the contract price and the payment of that premium to cover a particular subcontractor which was not the situation with Simpkins. (R. 37, 92). Furthermore, if such a premium had been paid there would have been no coverage to Simpkins because the policy covered only employees of the subcontractor and not the subcontractors.

The deputy director found "as a matter of fact, claimant was a subcontractor and not an employee of Frank Sanders" and denied compensation. (R. 194). Upon appeal to the full Board the findings of fact of the deputy director were adopted and the denial made the award of the full board. The superior court ruled similarly. This appeal is from that judgment.

1. The courts on appeal are bound by the findings of the Board of Workmen's Compensation if supported by any evidence. *Dill v. Ocean Acc. &c. Co.,* 95 Ga. App. 60 (96 SE2d 638); *General Fire &c. Co. v. Bellflower,* 123 Ga. App. 864, 866 (182 SE2d 678); *Fox v. Liberty Mut. Ins. Co.,* 125 Ga. App. 285, 288 (187 SE2d 305). "This court, in reviewing an award by the full board denying compensation, must accept that evidence most favorable to the employer; and if, so viewed, it authorizes an award denying compensation under the provisions of the workmen's compensation act . . . it must be affirmed." *Merry Bros. Brick &c.*

*Co. v. Holmes,* 57 Ga. App. 281 (1) (195 SE 223). Therefore this court must view the evidence in a light most favorable to Sanders. *Austin v. General Acc. Assur. Corp.,* 56 Ga. App. 481 (193 SE 86).

"The true test whether a person employed is a servant or an independent contractor is whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work, as contradistinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer of the time, manner, and method in the performance of the work. [Cits.]" *Banks v. Ellijay Lumber Co.,* 59 Ga. App. 270, 272 (200 SE 480).

The application of these established principles to the case at bar requires us to rule that the situation here was one involving an independent contractor rather than a master-servant situation. In *Employers Mut. Liab. Ins. Co. v. Johnson,* 104 Ga. App. 617 (122 SE2d 308) there are certain significant statements applicable to the facts before us. Thus at page 619, this court said that the continuous check of "the work of an independent contractor to see that the work is being done according to the specifications of the job is thoroughly consistent with the relationship of employer and independent contractor and with the mere right of the employer to insist on a certain specific result." Then on the last line of page 619 and continuing on page 620, it was ruled that "the right to change the work and the right to dispense with the independent contractor's services if, during the performance of the job, it appeared that he either was incapable or unwilling to do the job according to the plans and specifications" was consistent with the independent contractor relationship. "The right to control the manner and method means the right to tell the employee how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow" is the explanation stated on page 620 of *Employers Mut. Liab. Ins. Co. v. Johnson,* supra.

See also *Smith v. Maryland Cas. Co.,* 93 Ga. App. 222, 223 (91 SE2d 188) holding that "A contractor has the right to call to the attention of a subcontractor that the contract is not being followed and demand of the subcontractor a compliance therewith. [Cits.]"

2. There was no estoppel created by the existence of a workmen's compensation insurance policy for the employees of subcontractors. As is provided in Code Ann. § 114-112 the general contractor would be liable for compensation to the employees of his subcontractors. Nothing is therein said concerning subcontractors themselves. No premium had been deducted in this instance for the injured subcontractor and even if it had been deducted the policy would have covered only his employees. The cases cited by appellant of *New Amsterdam Cas. Co. v. Thompson,* 100 Ga. App. 677 (112 SE2d 273); and *Maryland Cas. Co. v. Wells,* 35 Ga. App. 759 (134 SE 788) have no application to the case at bar since in those cases a premium was charged to cover the particular employee.

3. Nor was an estoppel created by the agreement of Sanders to pay the hospital bill. As was said in *McCormick v. Kitchens,* 59 Ga. App. 376, 379 (1 SE2d 57): "[T]he mere fact that he orally agreed to pay the bill would not render him liable and no estoppel would result from the promise."

*Judgment affirmed. Hall, P. J., and Evans, J., concur.*

Argued October 4, 1973 — Decided January 7, 1974.

*Rich, Bass, Kidd & Broome, Charles T. Bass, Dennis M. Hall,* for appellant.

*Savell, Williams, Cox & Angel, John M. Williams, Elmer L. Nash,* for appellees.