66049, 66051. BEXLEY v. SOUTHWIRE COMPANY et al.
(two cases).
66050. HARRISON v. SOUTHWIRE COMPANY et al.

CARLEY, Judge.

Appellee-defendant Southwire Company (Southwire) is a manufacturer of industrial and commercial copper wire. Southwire operates a facility in Carrollton, Georgia, for smelting and refining copper. At that facility, scrap metal is fed into a large blast furnace and, after completion of several refining steps, pure copper is obtained. This process creates a large amount of fumes and dust, which contain particulate matter, including lead.

The instant appeals concern the health of two men who worked for a number of years in the Southwire facility. Appellant-plaintiff Harrison was employed by Southwire. Mr. Bexley, the husband of appellant-plaintiff Verna Mae Bexley, was employed by appellee-defendant Richards and Associates, Inc. (Richards), a corporation which performed maintenance work at the Southwire facility. On June 8, 1981, Mr. Harrison filed a complaint against appellees Southwire, Richards, Dr. Downey, and others. On June 24, 1981, Mrs. Bexley filed two separate complaints against appellees, one on behalf of her husband, an incompetent, and the second individually, seeking damages for loss of consortium. The three complaints that are the subject of the instant appeal allege the following: Harrison and Bexley had worked for several years in an area of the Southwire facility where, as a necessary part of their employment, they had come into contact with lead dust. They had sustained severe personal injuries caused by contact with such dust. Southwire allegedly knew or had reason to know that the operation of the plant was dangerous to the workers. It was further alleged that Southwire and appellee-defendant Dr. Downey, who maintained a health clinic at the Southwire facility, in fact, secretly monitored the health of the employees working at the facility and concealed such information from them. Such intentional concealment was alleged to constitute fraud, deceit and, as against Dr. Downey, medical malpractice which prevented Mr. Harrison and Mr. Bexley from taking precautionary measures or seeking medical treatment or other employment.

Subsequent to the filing of these complaints, Mr. Bexley died and his wife was substituted as a party in the suit instituted on his behalf. After discovery, Dr. Downey moved for summary judgment, asserting that, as against him, the Workers' Compensation Act barred the instant suits because Mr. Harrison, Mr. Bexley and he were all employees of the same employer.

The trial court granted summary judgment to Dr. Downey. Since venue as to the other appellee-defendants depended upon the residence of Dr. Downey, in Haralson County, the trial court dismissed the complaints against them also. Appellants appeal from the orders granting Dr. Downey's motion for summary judgment and dismissing the complaints against the other appellees for lack of venue. The two companion appeals by Mrs. Bexley and the appeal by Mr. Harrison have been consolidated for purposes of appellate review.

1. Appellants first assert that the trial court erred in granting summary judgment to Dr. Downey on the ground that Dr. Downey is shielded from suit under the Workers' Compensation Act. Appellants contend that Dr. Downey was an independent contractor, not an employee of Southwire.

OCGA § 34-9-11 (Code Ann. § 114-103) provides in pertinent part that "[t]he rights and remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee, . . . provided, however, that no employee shall be deprived of any right to bring an action against any third-party tortfeasor, *other than an employee of the same employer . . .*" (Emphasis supplied.) Under this provision it is clear that since workers' compensation claims have been filed for the same injuries here at issue, appellants are barred from bringing suit against Dr. Downey as a third party tortfeasor if, in fact, Dr. Downey was "an employee of the same employer." See generally *Tect Constr. Co. v. Frymyer,* 146 Ga. App. 300 (246 SE2d 334) (1978).

Initially, we must make a determination as to who employed Mr. Harrison and Mr. Bexley at the time their alleged injuries were incurred. It is undisputed that at all times Mr. Harrison was employed by Southwire. The evidence is also undisputed that although Mr. Bexley had been hired by Richards, at all times relevant to the instant case, he was working in the Southwire facility under the direct control and supervision of Southwire. Southwire had the exclusive right to assign work to Mr. Bexley and the exclusive right to discharge him. Thus, the evidence clearly shows that, as to Southwire, Mr. Bexley was a "borrowed employee." "[I]n order for an employee to be a borrowed employee, the evidence must show that '(1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant.' [Cit.]" *Six Flags Over Ga. v. Hill,* 247 Ga. 375, 377 (276 SE2d 572) (1981). See *Jarrard v. Doyle,* 164 Ga. App. 339 (1) (297 SE2d 301) (1982). Accordingly, under OCGA § 34-9-11 (Code Ann. § 114-103),

both Mr. Bexley and Mr. Harrison were employees of Southwire. See generally *U. S. Fidelity &c. Co. v. Forrester,* 230 Ga. 182, 183 (196 SE2d 133) (1973).

The issue thus becomes whether under OCGA § 34-9-11 (Code Ann. § 114-103) Dr. Downey was also an employee of Southwire, and therefore "an employee of the same employer," or an independent contractor, and therefore subject to suit as a third party tortfeasor. " 'The true test whether a person employed is a servant or an independent contractor is whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work, as contradistinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer of the time, manner, and method in the performance of the work. [Cits.]' [Cit.]" *Simpkins v. Unigard Mut. Ins. Co.,* 130 Ga. App. 535, 538 (203 SE2d 742) (1974). See also *Moss v. Central of Ga. R. Co.,* 135 Ga. App. 904, 906 (219 SE2d 593) (1975), citing Restatement of the Law, Agency 2d § 220 (2); *Miller v. Kimball,* 163 Ga. App. 435, 437 (294 SE2d 681) (1982).

This "right to control" test has been applied repeatedly by the courts of this state in considering whether a physician working for a hospital is an employee of that hospital, or is an independent contractor. See *Hodges v. Doctors Hosp.,* 141 Ga. App. 649, 650 (234 SE2d 116) (1977); *Newton County Hosp. v. Nickolson,* 132 Ga. App. 164 (207 SE2d 659) (1974); *Overstreet v. Doctors Hosp.,* 142 Ga. App. 895 (237 SE2d 213) (1977); *Allrid v. Emory Univ.,* 249 Ga. 35, 39 (2) (285 SE2d 521) (1982). The test is applied on a case by case basis, necessarily taking into consideration the factual situation in each case. See *Allrid v. Emory Univ.,* supra. We find the "right to control" test is applicable in this case for the purpose of determining whether Dr. Downey was working for Southwire as an independent contractor or as an employee. See generally *Gay v. Greene,* 91 Ga. App. 78, 81 (84 SE2d 847) (1954).

In the instant case, the evidence shows that, pursuant to an oral contract, Dr. Downey worked full time for Southwire from May of 1966 to April of 1981. He was paid a salary which was not based on the number of employees he saw. Dr. Downey's office was located in the Southwire facility, and his equipment and supplies were all provided by Southwire. His activities were periodically reviewed by his supervisors.

However, the evidence also shows that Dr. Downey was in charge of Southwire's Health Services. With specific regard to the blood

level testing at issue in the instant case, there is conflicting evidence as to whether Dr. Downey had authority to determine which employees were to receive such tests. The evidence is undisputed, however, that Dr. Downey had absolute discretion and authority to determine what types of tests to administer to Southwire employees, as well as discretion to determine the extent to which an employee should be tested. The results of such tests were not revealed to the Safety Division of Southwire, but remained subject to the "doctor-client privilege."

Based on this evidence, the trial court erred in finding that, as a matter of law, Dr. Downey was an employee of Southwire and not an independent contractor. Although it appears that Southwire exercised control over Dr. Downey in some regard, it is also clear that Southwire did not exercise control over the "manner and method in the performance of [his] work." *Simpkins v. Unigard Mut. Ins. Co.,* supra, at 538. "[W]here a '[corporate employer] reserve[s] *no right to control specific medical techniques* employed by the . . . doctors, but merely exercise[s] a limited surveillance in order to monitor the quality of medical care provided,' these controls are not inconsistent with an employer-independent contractor relationship. [Cit.]" (Emphasis supplied.) *Allrid v. Emory Univ.,* supra at 40. The evidence now of record clearly raises a jury question as to whether Dr. Downey was in fact an employee of Southwire or an independent contractor. See *Hodges v. Doctors Hosp.,* supra at 653; *Newton County Hosp. v. Nickolson,* supra at 167; *Dye v. Copeland,* 123 Ga. App. 119 (179 SE2d 558) (1970).

2. In its order granting summary judgment to Dr. Downey, the trial court also found that no genuine issue of material fact existed concerning whether Dr. Downey's acts were "done in a manner to deceive, mislead or otherwise fraudulently keep information" from appellants. Our review of the voluminous record reveals that there are genuine issues of material fact to be decided by the jury in this regard. There is some evidence that Dr. Downey in fact knew that Mr. Harrison and Mr. Bexley were sustaining high levels of lead intoxication as indicated by the tests conducted by him, but that he concealed the results of such tests from the men.

3. For the reasons discussed above, the trial court erred in granting summary judgment to Dr. Downey. It follows that it was also error to dismiss all other appellees for lack of venue.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED SEPTEMBER 28, 1983 —
REHEARING DENIED OCTOBER 17, 1983 —

*Jack F. Witcher, James I. Parker,* for appellants.

*David H. Tisinger, John J. Dalton, James T. McDonald, Jr., James H. Bratton, Jr., Donald B. Howe, Jr., Sidney F. Wheeler, Robert B. Hocutt, Henry D. Green, Jr., Michael C. Walls, William N. Withrow, Jr.,* for appellees.

*James K. Lange,* amicus curiae.