A03A2585. COOPER v. BINION et al.
(598 SE2d 6)

MILLER, Judge.

Jimmie Cooper sued Dr. Louis Binion and Tanner Medical Center (the "hospital") for medical malpractice arising out of Dr. Binion's treatment of Cooper in the hospital's emergency room. The trial court granted summary judgment to the hospital on the ground that Dr. Binion was an independent contractor. Cooper appeals, arguing that some evidence showed that Dr. Binion was in fact a hospital employee and also that under the doctrine of apparent authority, the hospital held Dr. Binion out as its employee. We agree and therefore reverse the grant of summary judgment to the hospital.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant. Id.

Construed in favor of Cooper, the evidence showed that when Cooper lost feeling in his left hand, his wife drove him to the hospital's emergency room for treatment. She chose this hospital because her son had previously taken his children there, and they had received good treatment. Dr. Binion saw Cooper and determined that Cooper may have had a transient ischemic attack. Although Dr. Binion now admits that he should have prescribed a blood thinner such as aspirin, he failed to do so and sent Cooper home without any recommendations for medication. Consequently, Cooper suffered a stroke the next day, which has left him incapacitated in various respects.

Cooper sued Dr. Binion and the hospital for medical malpractice. The hospital moved for summary judgment, arguing it was not responsible for Dr. Binion's actions. The hospital submitted Dr. Binion's testimony and contract, which indicated that Dr. Binion was an independent contractor. Agreeing that Dr. Binion was an independent contractor, the trial court entered summary judgment in favor of the hospital. Cooper appeals, arguing that some evidence showed that Dr. Binion was either an actual employee or was at least represented as an apparent employee, upon which representation Cooper relied.

1. The first question is whether some evidence showed that Dr. Binion was an actual employee of the hospital. A hospital is liable for the actions of its employees acting within the scope of their employment and for the negligence of a contractor if the hospital retains the right to direct or control the time and manner of executing the work (which basically converts the contractor to an employee for liability purposes). See OCGA §§ 51-2-2; 51-2-5 (5). Thus,

> [t]he rule is that for the hospital to be held liable it must be shown that the doctor was an employee of the hospital and not an independent contractor. The true test of whether the relationship is one of employer-employee or employer-independent contractor is whether the employer, under the contract either oral or written, assumes the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.

(Citations and punctuation omitted.) *Allrid v. Emory Univ.*, 249 Ga. 35, 39-40 (2) (285 SE2d 521) (1982); see *Hodges v. Doctors Hosp.*, 141 Ga. App. 649, 651 (2) (234 SE2d 116) (1977).

In making this determination in the case at bar, we note two principles at the outset. First, merely being on the staff of a hospital does not ordinarily make a physician an employee of the hospital. *Clary v. Hosp. Auth. of the City of Marietta*, 106 Ga. App. 134-135 (1) (126 SE2d 470) (1962). Second, the labeling of the physician as an independent contractor in his contract with the hospital "is not determinative of the status of any such person and other factors may negate the label. [Cits.]" *Doctors Hosp. of Augusta v. Bonner*, 195 Ga. App. 152, 162 (6) (a) (392 SE2d 897) (1990). " 'The concern is with essence, not nomenclature.' [Cit.]" *Lee v. Satilla Health Svcs.*, 220 Ga. App. 885, 886 (1) (470 SE2d 461) (1996).

*Lee*, supra, 220 Ga. App. at 886-887 (1), has identified several factors to assist a court in determining whether the hospital has the right to control the time, manner, and method of execution of an emergency room physician's work. We will consider these as well as other factors found in the case law on this question.

(a) *The right to direct the physician's work step-by-step*. The contract between Dr. Binion and the hospital is clear that the hospital has no right to direct his work step-by-step. The hospital "shall not exercise any control over the Physician in the practice of medicine. . . . The parties hereto recognize that the Physicians providing medical and clinical services hereunder shall be independent contractors insofar as they practice medicine and the Hospital will not interfere therewith." Further, "in no way shall [the] Hospital be considered

deemed to be engaged in the practice of medicine. Hospital should not exercise control of any nature, kind or description relating to the manner or means in which the Physician performs his duties and provides the emergency department coverage." Although Dr. Binion initially testified that he was supervised by a medical director at the hospital, the evidence showed this was merely a consultation relationship. Thus, the undisputed evidence on this factor would indicate that Dr. Binion was an independent contractor.

(b) *Contracts to perform a service rather than accomplish a task.* " 'The latter are indicative of an independent contractor relationship, the former of an employee-employer relationship.' [Cit.]" *Lee,* supra, 220 Ga. App. at 886 (1). Since Dr. Binion was obligated to help "provide 24-hour a day coverage in the emergency room, i.e., to provide [a] service, this factor indicates he was the hospital's employee." (Citation and punctuation omitted.) Id.; see *Goins v. Tucker,* 227 Ga. App. 524, 528 (4) (489 SE2d 857) (1997) (physical precedent only).

(c) *The right of the hospital to inspect the physician's work.* "Since there is no evidence of record that the hospital had such authority, we find that Dr. [Binion] would be classified as an independent contractor under this factor." *Lee,* supra, 220 Ga. App. at 886 (1).

(d) *The supplier of the equipment.* Although the evidence here does not address this matter directly, the hospital apparently provided the facility and equipment with which Dr. Binion performed his job. This would suggest that Dr. Binion was an employee. *Lee,* supra, 220 Ga. App. at 886-887 (1); see *Goins,* supra, 227 Ga. App. at 528 (4); *Bexley v. Southwire Co.,* 168 Ga. App. 431, 433 (1) (309 SE2d 379) (1983), aff'd, *Downey v. Bexley,* 253 Ga. 125 (317 SE2d 523) (1984).

(e) *The nature or skill of the physician's work.* " 'The more skilled the employee, the more likely he is an independent contractor.' [Cit.]" *Lee,* supra, 220 Ga. App. at 887 (1). Under this test, Dr. Binion as an emergency room physician would likely be an independent contractor. Id.

(f) *The hospital's right to control the physician's time.* "The right to control the time means the employer has assumed the right to control the person's actual hours of work." (Footnote omitted.) *Williamson v. Coastal Physician Svcs. of the Southeast,* 251 Ga. App. 667, 668 (554 SE2d 739) (2001). Where the hospital requires the physician to work certain hours or arranges the physician's schedule, this factor shows that the physician is an employee and may alone preclude summary judgment. See *Hollingsworth v. Ga. Osteopathic Hosp.,* 145 Ga. App. 870, 871-872 (245 SE2d 60) (1978) (physician required to be at hospital from 7:00 a.m. to 7:00 p.m. on date in question; summary judgment reversed); *Hodges,* supra, 141 Ga. App. at 653 (2) (hospital told physician when he had to be in emergency room; error to direct

verdict in hospital's favor); *Newton County Hosp. v. Nickolson*, 132 Ga. App. 164, 167 (2) (207 SE2d 659) (1974) (hospital arranged physician's emergency room schedule; summary judgment properly denied to hospital); see generally *Brown v. Coastal Emergency Svcs.*, 181 Ga. App. 893, 896 (2) (354 SE2d 632) (1987) ("Such rulings suggest that, in practice, a hospital may subject itself to vicarious liability for the malpractice of its emergency room physicians merely by assuming control over the time of their performance and without assuming control over the manner and method of their performance.").

The exception to this principle is where the physician has the right to designate what hours he is willing to work *before* the hospital makes up its schedule, which designation the hospital must respect. See *Williamson*, supra, 251 Ga. App. at 669 ("The contract specifically provides that each month Dr. Johnson shall notify [the hospital] of the days and hours that he is available to work in the emergency room, and that [the hospital] will schedule him to work based on his notification of availability."); *Brown*, supra, 181 Ga. App. at 896 (2) (the doctors "could not be required either to work on specific dates, absent a prior manifestation of willingness on their part to do so, or to work any minimum number of hours per month").

Significantly, if the hospital simply retains the right to control the physician's hours (without actually exercising that right), such is sufficient to show control over the physician's time. See *Hodges*, supra, 141 Ga. App. at 651 (2) ("It should be emphasized that the important consideration is not whether the employer exercised control over the time and manner of executing the work but whether the employer retained the right to do so. [Cit.]"); cf. *Bonner*, supra, 195 Ga. App. at 162 (6) (a) ("The fact that Hospital may not have exercised this right to its fullest extent or in each particular case does not weaken its significance. [Cits.]").

Here the contract between Dr. Binion and the hospital expressly provided that "[i]n entering into this contract both parties acknowledge that the Hospital shall control, through its Physician, the hours of work but it shall not exercise any control over the Physician in the practice of medicine." Thus, while the hospital here may have intended to avoid exercising control over the *method* Dr. Binion followed to practice medicine, it apparently retained the right to control his *hours* of work, with no contractual provision that he had the power to designate his hours of availability in advance or that the hospital was to respect such a designation. Dr. Binion testified that he was required to work 12-hour shifts from 7:00 to 7:00 and that he understood the hospital controlled his hours. Contrary evidence indicating that Dr. Binion controlled his hours simply makes this an issue of fact for the jury.

(g) *The method of payment.* "If an employee is paid for the entire task performed, this evidences an independent contractor relationship. If, however, the employee is paid by the hour, that exemplifies an employee-employer relationship." (Citations and punctuation omitted.) *Lee*, supra, 220 Ga. App. at 887 (1). Here the hospital paid Dr. Binion by the hour ($65 per hour), which indicates he was an employee of the hospital. See *Goins*, supra, 227 Ga. App. at 528 (4); *Macon-Bibb County Hosp. Auth. v. Whipple*, 182 Ga. App. 195, 196 (2) (355 SE2d 83) (1987); *Nickolson*, supra, 132 Ga. App. at 167 (2).

(h) *Right to choose which patients to treat. Bonner*, supra, 195 Ga. App. at 162 (6) (a), could be read to indicate that an emergency room physician who is required to treat all patients at the hospital is more likely an employee. *Overstreet v. Doctors Hosp.*, 142 Ga. App. 895, 896 (2) (237 SE2d 213) (1977), and *Pogue v. Hosp. Auth. of DeKalb County*, 120 Ga. App. 230 (170 SE2d 53) (1969), held otherwise, with *Pogue* explaining that such is merely the identification of the work to be performed, not a reservation of control over the manner in which the services were to be performed. 120 Ga. App. at 230. We concur with the direct holding in *Pogue* and conclude that inasmuch as this appears to be merely a description of the task to be accomplished in any hospital's emergency room, it does not weigh in favor of an employee-employer relationship.

(i) *Physician spends all working hours at hospital.* A physician who spends all his working hours at the hospital and maintains no separate practice more likely appears to be an employee of the hospital. *Nickolson*, 132 Ga. App. at 167 (1); see *Bexley*, supra, 168 Ga. App. at 433 (1). Here Dr. Binion spent all his working hours at the hospital and maintained no separate practice, and therefore this factor weighs in favor of an employee-employer relationship.

(j) *The method of billing the patients.* Where the hospital handles and collects all of the patient billings through its system and does so in its name, with power to approve the physician rates charged, such would appear to be an employee-employer relationship. *Bonner*, supra, 195 Ga. App. at 162 (6) (a). Evidence indicates that is the circumstance here.

(k) *Payments for medical malpractice insurance.* A hospital that pays the physician's medical malpractice insurance is more likely the physician's employer. *Goins*, supra, 227 Ga. App. at 528 (4). Under the contract here, the hospital pays Dr. Binion's medical malpractice insurance premiums.

Based on the above discussion, especially concerning the hospital's retaining control over Dr. Binion's time, we hold that the trial court erred in granting summary judgment to the hospital on the issue of whether Dr. Binion was an actual employee of the hospital.

2. The trial court also erred in granting summary judgment to the hospital on the issue of whether Dr. Binion was an apparent employee of the hospital. The doctrine of apparent or ostensible agency provides: " 'One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.' " *Richmond County Hosp. Auth. v. Brown*, 257 Ga. 507, 508 (361 SE2d 164) (1987), quoting Restatement of the Law, Agency, § 267. *Richmond* held that the doctrine of apparent or ostensible agency applies to certain hospital/doctor arrangements and in particular to emergency room settings. Id. at 509-510. The Supreme Court concluded that if the plaintiff could prove that the hospital represented to him that its emergency room physicians were its employees and that he therefore justifiably relied on the skill of the doctors but suffered injury due to the legal insufficiency of their medical services, the hospital could be held liable under this doctrine. Id. at 510.

Here Cooper and his wife testified that they understood from the circumstances that the emergency room physician provided by the hospital was a hospital employee, particularly since Dr. Binion told the wife that he could not be their private doctor inasmuch as he had no private practice and did not see patients outside of the hospital's emergency room. The wife further testified that they relied on this understanding and on the hospital's good reputation in accepting medical care from Dr. Binion. See *Abdul-Majeed v. Emory Univ. Hosp.*, 213 Ga. App. 421, 423-424 (1) (445 SE2d 270) (1994); *Whitaker v. Zirkle*, 188 Ga. App. 706, 709 (2) (374 SE2d 106) (1988).

The hospital counters that it explicitly informed Cooper and his wife that Dr. Binion was not a hospital employee by posting a sign in the admissions area to this effect and by including a paragraph in the admitting documents (signed by the wife) reiterating this. Generally, posting a conspicuous sign in the admissions area that the emergency room physicians are not hospital employees and having the patient sign an acknowledgment to this effect would preclude a claim of apparent authority. *Holmes v. Univ. Health Svc.*, 205 Ga. App. 602, 603 (423 SE2d 281) (1992); see *Sorrells v. Egleston Children's Hosp. at Emory Univ.*, 222 Ga. App. 229, 231 (1) (474 SE2d 60) (1996); *Abdul-Majeed*, supra, 213 Ga. App. at 423 (1). However, since there was testimony that a witness present that day did not recall seeing any such signs in the admissions area, and there was no testimony that either Cooper or his wife saw such, some evidence would indicate that no such sign was posted or if so, it was not conspicuous. The acknowledgment in the admitting form was one of thirteen paragraphs in a two-page document signed by Cooper's wife, and nothing

indicates that the hospital called attention to the acknowledgment. See *Sorrells*, supra, 222 Ga. App. at 231 (1). Under these circumstances and evidence, we cannot hold that the hospital as a matter of law sufficiently notified Cooper that Dr. Binion was not its employee.

Accordingly, the trial court also erred in granting the hospital summary judgment on the issue of apparent or ostensible authority.

*Judgment reversed. Smith, C. J., and Ruffin, P. J., concur specially.*

SMITH, Chief Judge, concurring specially.

I concur fully with Division 1 and with the result reached in Division 2. I write separately because I do not agree with all that is said in Division 2.

The hospital submitted positive evidence that a sign was posted in the admissions area reciting that doctors were independent contractors. In concluding that factual issues exist as to whether a sign was indeed posted, the majority relies on the testimony of one witness that he did not recall seeing such a sign, in addition to the fact that "there was no testimony that either Cooper or his wife saw" a sign. This circumstantial evidence has no probative value against the positive, uncontradicted evidence presented by the hospital concerning the existence of a sign. See, e.g., *Cannon v. Jeffries*, 250 Ga. App. 371, 375 (551 SE2d 777) (2001). Contrary to the majority's conclusion, no factual issue exists as to the existence of a sign. The hospital has established this fact. Whether the sign was *conspicuously* posted, however, is a factual question that must be resolved by the jury.

I am authorized to state that Presiding Judge Ruffin joins in this special concurrence.

DECIDED FEBRUARY 18, 2004 —
RECONSIDERATION DENIED APRIL 1, 2004 — 

*Hughes & Bailey, David R. Hughes*, for appellant.
*Tisinger, Tisinger, Vance & Greer, Richard G. Tisinger, Jr., Kenneth B. Crawford, Insley & Race, Brynda R. Insley*, for appellees.

