## DONALD NOEL ET AL. *v.* LAWRENCE AND MEMORIAL HOSPITAL ET AL.

Superior Court, Judicial District of New London

File Nos. CV-10-6002479, CV-10-6004555

Memorandum filed September 11, 2014

*Joseph P. Zeppieri,* for the plaintiffs.

*Michael D. Neubert* and *Sandy T. Roussas,* for the named defendant.

MOUKAWSHER, J.

1

Summary: hospitals have nondelegable duties
to emergency room patients

Some people accept legally enforceable duties by contract and some have them thrust upon them by legislatures or courts. In 2009, in *Machado* v. *Hartford,*

the Connecticut Supreme Court observed that some of these duties are so important that liability for discharging them cannot be contracted out—such duties are "nondelegable" duties.[1]

In deciding whether a hospital is vicariously liable for "independent contractor" doctors in its emergency room, all questions concerning agency would be decided as a matter of law if hospitals have nondelegable duties concerning the adequacy of emergency room care. The answer to the question whether hospitals have such nondelegable duties in turn depends upon whether hospitals' statutory and common-law duties to emergency patients are so important to society that they may not be contracted out.

One way to answer this question is to consider that while posing it, sick and injured men, women and children have died or been redeemed by the quality of care in emergency rooms across the country. When people rush to the nearest hospital for help, they have little time and no leverage to bargain over their treatment or understand who is really giving it. They put their trust in the institution they arrive at and hope for the best. They may reflect on the fact that nothing in life is more important than life itself. Since this reflection is undoubtedly true, it should also be undoubted that hospitals operating emergency rooms have duties so important that liability for performing them may not be shed by hiring "independent contractors" to staff their emergency rooms.

2

Hospitals have significant statutory
and common-law duties

As the Connecticut Hospital Association rightly points out on its website, the law imposes serious duties

---

[1] 292 Conn. 364, 371–72, 972 A.2d 724 (2009).

on hospitals: "Healthcare is among the most highly regulated industries in Connecticut and across the nation. Numerous regulatory agencies, at both the state and federal levels, conduct oversight of hospital operations—from the building and structure of the facilities, to the licensing or certification of hospital staff, to the quality of patient care, to reimbursement requirements."[2]

To exist at all, a hospital must be licensed under General Statutes § 19a-491. Literally, the statute says any "institution" must be licensed, but a hospital is the first among those included in the definition of "institution" under General Statutes § 19a-490a (a), so everywhere the relevant statutes mention "institutions," they mean hospitals. Under General Statutes § 19a-13, a license is, by definition, only for hospitals that can "demonstrate competence" and prove following examination that they meet "minimum standards . . . ." General Statutes § 19a-495 says that licensed hospitals are subject to Department of Public Health regulations concerned with "promoting safe, humane and adequate care and treatment of individuals in institutions. . . ." The Regulations of Connecticut State Agencies set further standards. Under Regulation 19-13-D3 (f), hospitals are required to "maintain or have available . . . competent medical supervision, appropriate to the needs of the hospital in serving its patients." Regs., Conn. State Agencies § 19-13-D3 (f).

At oral argument, Lawrence & Memorial Hospital (L&M), rested a key part of its claim on its "absolute" belief that only emergency room doctors—not the hospitals that run them—have a legal duty to provide adequate emergency room care. On this, the hospital is wrong as a matter of law. Regulation 19-13-D3 (j) requires each hospital "to provide adequate care for persons with

---

[2] http://www.chime.org/advocacy/patient-care-regulation/.

acute emergencies at all hours." Regs., Conn. State Agencies § 19-13-D3 (j) (2). Importantly, the law distinctly obliges the hospital to provide adequate emergency care. It does not merely oblige the doctors who directly care for emergency room patients.

Hospitals failing in these duties may face sweeping interventions permitted under state law. General Statutes § 19a-494 permits the Commissioner of Public Health to revoke the licenses of hospitals providing inadequate care, to censure them, to suspend them, and even to specify how to run the hospital under a "directed plan of correction. . . ." If the proceedings under this statute are too slow, in emergencies, General Statutes § 19a-494a permits the commissioner to shut them down, limit them or compel them to their duties without even so much as a hearing.

General Statutes § 19a-127p requires hospitals to contract with patient safety organizations whose goal it is to "improve patient care and safety . . . ." Under General Statutes § 52-184c, where a plaintiff proves a hospital breached "the prevailing professional standard of care," it can liable for negligence.

Federal regulation is layered on top of all of this, including through requiring Medicaid/Medicare eligible hospitals to be certified by the Joint Commission, an entity whose job it declares is, "evaluating health care organizations and inspiring them to excel in providing safe and effective care of the highest quality and value." As Connecticut's Office of Legislative Research reports, emergency rooms at these hospitals are specifically regulated: "The federal Emergency Medical Treatment and Labor Act (EMTALA) requires any hospital that participates in Medicare and provides emergency services to provide (1) an appropriate medical screening examination to anyone who comes to its emergency

department asking for treatment and (2) necessary stabilizing treatment or transfer to another medical facility if the examination reveals an emergency medical condition. Since all Connecticut hospitals participate in Medicare and provide emergency services, EMTALA applies to them."[3]

Therefore, by statute and regulation, the duty to provide adequate care at a hospital emergency room rests directly on the hospital.

In providing care, hospitals, like any other provider, owe a common-law duty of care. In 2006 *Carrano* v. *Yale-New Haven Hospital* held that hospitals are liable for medical malpractice when a plaintiff proves: "(1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury."[4] (Internal quotation marks omitted.)

Hospitals operating emergency rooms have significant legal duties. The question remains whether the duties are so important to society that they may not be delegated.

### 3

### Hospitals' emergency duties are too important to delegate

#### a

#### Hospital emergency rooms are not merely important, but vital

The importance of a hospital emergency room can hardly be overstated. According to the Centers for Disease Control (CDC), in 2010 there were roughly 130 million emergency room visits in the United States, a

---

[3] http://www.cga.ct.gov/2003/olrdata/ph/rpt/2003-r-0621.htm.

[4] 279 Conn. 622, 656, 904 A.2d 149 (2006).

number which translates to 42.8 people per 100 persons.[5] In a country of increasingly divergent experience, this number is striking. L&M claims its emergency department alone handles 86,000 patient visits annually.[6] The CDC says that it in 2010, just 7 percent of emergency room visits were "non-urgent," leaving the overwhelming business at these locations being matters of high and the highest importance to human life.[7] During the same period, roughly one-third of emergency room visits resulted in patients not walking away, including hospital admission, transfer to another facility and death.[8] The pressure on emergency rooms is enormous. The CDC says emergency use has been steadily accelerating for over a decade.[9] Round the clock emergency medical care is so important that Connecticut Regulation 19-13-D3 (j) requires each hospital "to provide adequate care for persons with acute emergencies at all hours." Regs., Conn. State Agencies § 19-13-D3 (j) (2). And emergency room quality saves lives. According to HealthGrades, an independent provider of consumer information about doctors and hospitals, top emergency rooms have a nearly 40 percent lower death rate than weaker performers.[10]

b

Hospitals' emergency duties are far more important
than the duties our courts have recognized
as nondelegable in other cases

The relative importance of a hospital's duty to maintain adequate emergency room care is even clearer

---

[5] http://www.cdc.gov/nchs/fastats/emergency-department.htm/.

[6] http://www.lmhospital.org/about/century-of-care.aspx.

[7] http://www.cdc.gov/nchs/ahcd/nhammcs_emergency/2010_ed_web_tables.pdf.

[8] Id.

[9] http://www.cdc.gov/nchs/fastats/emergency-department.htm.

[10] http://www.healthgrades.com/about/press/top-cities-for-emergency-medical-care-identified-by-healthgrades?referer=true.

when we consider the less life-threatening circumstances where Connecticut courts have found a duty important enough to be nondelegable. In 2001, in *Gazo* v. *Stamford*, the court confirmed the widely recognized rule that, "the owner or occupier of premises owes invitees a nondelegable duty to exercise ordinary care for the safety of such persons."[11] (Internal quotation marks omitted.) As the court explained it, nondelegable duties create vicarious liability situations, in which, "the law has . . . broaden[ed] the liability for that fault by imposing it upon an *additional*, albeit innocent, defendant . . . namely, the party that has the nondelegable duty."[12] (Emphasis in original; internal quotation marks omitted.) In *Ramsdell* v. *Union Trust Co.*, the Supreme Court held that the core functions of trustees are nondelegable.[13] Last year, in *State* v. *Brown*, the Appellate Court even held that judges have nondelegable duties: they may not delegate to the state's attorney or defense counsel the duty to canvass plea bargainers about the implications of violating plea conditions.[14]

In 2009, in *Teney* v. *Oppedisano*, the Superior Court held a plumber with warranty obligations liable for flood damage caused by an independent contractor because the plumber's duty to perform the work to the warranty standard was nondelegable.[15] In *Borovicka* v. *Oshkosh Corp.*, this court confirmed the long-recognized rule that liability for inherently dangerous activities is nondelegable.[16] In 2005, in *Cornelius* v. *Dept. of*

---

[11] 255 Conn. 245, 257, 765 A.2d 505 (2001).

[12] Id.

[13] 202 Conn. 57, 69, 519 A.2d 1185 (1987).

[14] 145 Conn. App. 174, 181, 75 A.3d 713, cert. denied, 310 Conn. 936, 79 A.3d 890 (2013).

[15] Docket No. CV-05-5000495, 2009 WL 1055528, *2 (Conn. Super. March 24, 2009).

[16] Docket No. CV-11-6025900, 2013 WL 2350516, *3–4 (Conn. Super. May 7, 2013).

*Banking,* the Superior Court held that a mortgage broker is liable for the misdeeds of an independent contractor appraiser, reasoning that "courts have repeatedly held that licensees are responsible for the acts of their employees . . . [and] to speak of the liability of the licensee without referring to the liability of the licensee's employees and agents would often be a meaningless abstraction and would make the enforcement of administrative regulations a virtual impossibility."[17] (Citations omitted; internal quotation marks omitted.) The court noted that the rule has been regularly applied for the agents and employees of car dealers and makes sense in most license situations.[18]

Finally, in 2009 in *Machado* v. *Hartford,* the Supreme Court recognized and enforced the long-standing rule that municipalities may not escape liability to maintain public roads by hiring independent contractors—the state statutes imposed the duty to maintain roads on municipalities.[19] The court took as a bedrock assumption for its analysis that "a vital public duty, once imposed by the state, generally is considered nondelegable . . . ."[20] (Footnote omitted.)

If the work of plumbers, landlords and even judges is important enough to be nondelegable, the work of emergency rooms is important enough to be nondelegable, too.

4

Hospitals' emergency duties are too important
to apply only actual and apparent
agency rules

While Connecticut judges have not written much about this issue, those who have done so have typically

---

[17] Docket No. CV-04-4000627, 2005 WL 1757631, *5 (Conn. Super. June 14, 2005), aff'd, 94 Conn. App. 547, 893 A.2d 472, cert. denied, 278 Conn. 913, 899 A.2d 37 (2006).

[18] Id.

[19] 292 Conn. 372–73.

[20] Id.

considered it as a question of agency, and, indeed, the parties in this case had mostly conceived of it in the same way. But, as the Appellate Court noted in 1997 in *Pion* v. *Southern New England Telephone Co.*, the existence and character of a duty is for the court to decide.[21] And while the complaint only refers to "respondeat superior," Practice Book § 10-4, says, "[i]t is unnecessary to allege any . . . duty which the law implies from the facts pleaded." So, regardless of what the parties claim, the court is forced to decide the correct legal duty to apply to these facts to settle whether any vicarious liability may attach to the hospital.

Among those courts considering the agency issue and concerned about the unfairness of delegation, most have sought to apply apparent agency rules. In *Heath* v. *Day Kimball Hospital*, for instance, the court denied a hospital summary judgment in an emergency room contractor case, recognizing that liability could rest on apparent agency as well as agency grounds.[22] According to *Heath*, two facts must be proved to show apparent agency: "(i) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe, and did believe, that the agent possessed the necessary authority."[23] (Internal quotation marks omitted.)

This year, in *Ntumbanzondo* v. *Bang Chau*, this court cited ten cases applying the apparent authority doctrine in hospital cases and then joined them.[24] But it quoted

[21] 44 Conn. App. 657, 660, 691 A.2d 1107 (1997).

[22] Docket No. CV-11-6026678, 2013 WL 6989523, *6 (Conn. Super. December 16, 2013).

[23] Id.

[24] Docket No. CV-11-6017893, 2014 WL 3417223, *5-6 (Conn. Super. January 7, 2014).

something from the court's similar decision last year in *Cadavid* v. *Ranginwala*, which the *Cadavid* court borrowed from other cases. These borrowed bits are bothering the court here: "[I]t would be unfair to allow the secret limitations on liability contained in a doctor's contract with the hospital to bind the unknowing patient . . . . Public outrage . . . would surely follow a public announcement by the hospital that it regards all staff doctors as completely independent professionals, conducts no supervision of their performance and takes no interest in their competence."[25] (Internal quotation marks omitted.)

The last part rings true, but the reference to secret limitations is a problem. It suggests that a hospital charged with maintaining adequate emergency room care can escape liability for negligent care merely by revealing its secret and telling patients the staff doctors are independent contractors. Connecticut courts appear to have no significant experience considering disclosures given to emergency room patients telling them the doctors who will treat them are independent contractors for whom they disclaim responsibility.

Courts inclined toward the apparent agency route could consider the approach the Georgia Appellate Court used in *Cooper* v. *Binion* in 2004.[26] The hospital in that case posted a sign saying the doctors were not hospital employees and a two page signed admitting document said the same thing.[27] The *Cooper* court considered the question of apparent authority and concluded it was a jury question because, "[t]he

---

[25] Docket No. CV-12-6014019, 2013 WL 3766809, *5–6 (Conn. Super. June 24, 2013).

[26] 266 Ga. App. 709, 598 S.E.2d 6 (2004), cert. denied sub nom. *Tanner Medical Center, Inc.* v. *Cooper*, 2005 Ga. LEXIS 196 (Ga. February 21, 2005).

[27] Id., 714–15.

acknowledgment in the admitting form was one of thirteen paragraphs in a two-page document signed by Cooper's wife, and nothing indicates that the hospital called attention to the acknowledgment."[28]

As superficially attractive as it might be to simply let a jury decide from all of the circumstances whether a given hospital holds its doctors out as employees or contractors, this approach risks doing more harm than good. It broadcasts to hospitals that to avoid liability they need to try harder to get their patients to understand the concept of vicarious liability and to make them accept that the hospitals are not subject to it because their emergency room doctors are independent contractors. To achieve this, it would not be enough for patients to hear the words "independent contractor." That label tells nonlawyers nothing. Courts would likely continue to let jurors decide whether patients were told enough information and hospitals would be pressured to respond by confronting patients with even more legal information.

It seems poor policy to assume that a panic stricken mother holding a sick child should be required to absorb a lesson on vicarious liability. Likewise, the dying, the unconscious, and the bleeding are poor candidates for such lessons. And it makes no sense to let someone try to sort out who can understand and who cannot. The circumstances in an emergency situation are too stressful, too hurried and too important to be burdened with this form of legal triage. Indeed, it is arguable that a hospital is better off with a clear rule of liability for doctor misdeeds than a rule where they may never know or plan for their potential exposure and are encouraged simply to be more aggressive and see how it sits with a jury.

---

[28] Id.

Despite this logic, at least four Connecticut Superior Courts have rejected imposing a nondelegable duty on hospitals. In *Tiplady* v. *Maryles*, the court rejected the idea, but it held nothing more than: "The court finds that Connecticut law does not recognize a claim based on nondelegable duty against a Connecticut hospital for the negligence of physicians employed by another nonhospital entity as emergency room physicians staffing that hospital's emergency room."[29] The ruling said the court planned to file a detailed opinion on the subject, but the court never filed it. Because the decision is not binding here, and the court did not explain why it ruled this way, the opinion is not useful.

The only substantive Connecticut comment on the matter was the 2010 decision in *Dunn* v. *Chen*.[30] The court in that case refused to hold that a hospital had a nondelegable duty with respect to the work of its anesthesiologists. The court noted the absence of anything suggesting hospital control or responsibility for this group of doctors and rejected a general responsibility flowing from hospital regulation requiring "adequate care": "To rule that there is a viable claim as a result of the actions of the anesthesiologist administering medical care to a patient would create a whole new range of liability upon a hospital that has never before been permitted. The regulations imposed by the state and federal governments are clearly to ensure the availability of treatment."[31]

This case considers the different circumstances of the emergency room, so *Dunn* does not conflict. There was no emergency in *Dunn*. Unlike patients such as Dunn who choose the time, place, manner, and principal

---

[29] Docket No. CV-07-5003525, 2010 WL 3039171, *1 (Conn. Super. June 25, 2010).

[30] Docket No. CV-08-5008536, 2010 WL 5610866 (Conn. Super. December 17, 2010).

[31] Id., 12.

players in their operations, patients seeking emergency treatment seek treatment directly from the hospital. They do not choose any of the people who treat them; they have no time to bargain, none to consider options, a poor state of mind to consider anything, and no real options even if they had a chance to weigh them. That does not mean that a hospital may contractually shed liability for anesthesiologists; it just means that this decision does not consider them. It considers an emergency. Hospital emergencies are more important than other occasions in a hospital and most other occasions in life. The absence of choice, the need for speed, and the hospitals' exclusive responsibility for choosing all of the service providers involved all make it reasonable for patients to expect that the hospital is responsible for their treatment. This makes the hospital's duty to provide adequate emergency room care important enough to recognize as nondelegable, regardless whether any other hospital duties may be delegated.

*Dunn* should not be read to suggest that the hospital regulations aim at something other than requiring a minimum standard of care when they use the word "adequate." *Dunn* does not elaborate enough to give a clear sense of what it meant by saying the regulations are seeking only to ensure "treatment." Clearly, using a qualitative word like "adequate" means something more than any old treatment at all; regulating hospitals would be pointless if the regulations were not aimed at the institutions' quality of the care. In *Machado* v. *Hartford*, the Supreme Court held that municipalities had a nondelegable duty to maintain safe roads even though the statute only required municipalities to "build and repair all necessary highways and bridges . . . ."[32] (Internal quotation marks omitted.) If the Supreme Court can find a standard of care flowing from the qualitative word "necessary," there is every reason here

---

[32] 292 Conn. 372.

to find one flowing from the qualitative word "adequate."

This court also rejected the duty at issue here in 2011 in *Dunkirk* v. *Ranginwala*[33] and last year in *Cadavid* v. *Ranginwala*.[34] Neither case said anything more than that no case had recognized a nondelegable duty in these circumstances and that they agreed with *Tiplady* and *Dunn*. Therefore, these decisions are not helpful guides here, either.[35]

5

Thoughtful decisions from other states recognize an emergency room nondelegable duty

Two states appear to reject the nondelegable duty doctrine related to emergency room care. In 1998 in *Baptist Memorial Hospital System* v. *Sampson*, the Texas Supreme Court declared that patients had adequate recourse in suing physicians.[36] In *Kelly* v. *St. Luke's Hospital of Kansas City*, the Missouri Court of Appeals held that the duty was not created by Missouri's statutes and regulations, and that emergency room work was not an inherently dangerous activity.[37]

Five other jurisdictions apply the nondelegable duty doctrine to prevent hospitals from contracting out their liability for doctors' emergency room care. Two years ago in *Wolcoff* v. *United States*, the United States District Court for the District of Alaska held that Alaska has imposed a nondelegable duty on hospitals employing consulting physicians in their emergency rooms since

---

[33] Superior Court, judicial district of Waterbury, Docket No. CV-10-6008954 (November 21, 2011) (*Agati, J.*).

[34] Docket No. CV-12-6014019, 2013 WL 3766809 (Conn. Super. June 23, 2013).

[35] Id., 6–7.

[36] 969 S.W.2d 945, 949 (Tex. 1998).

[37] 826 S.W.2d 391 (Mo. App. 1992).

1987.[38] In the 1987 case of *Jackson* v. *Power*, the Alaska Supreme Court applied the doctrine, noting that it previously applied it to common carriers and that: "We have little trouble concluding that patients, such as Jackson, receiving treatment at a hospital emergency room are as deserving of protection as the airline passengers in [*Alaska Airlines, Inc.* v. *Sweat*, 568 P.2d 916 (Alaska 1977)]. Likewise, the importance to the community of a hospital's duty to provide emergency room physicians rivals the importance of the common-carriers' duty for the safety of its passengers."[39]

The court further pointed out that hospitals have regulatory responsibility for the care provided inside them and that: "We, therefore, hold that a general acute care hospital's duty to provide physicians for emergency room care is non-delegable. Thus, a hospital such as [Fairbanks Memorial Hospital] may not shield itself from liability by claiming that it is not responsible for the results of negligently performed health care when the law imposes a duty on the hospital to provide that health care."[40]

Florida agrees. Two years ago in *Newbold-Ferguson* v. *AMISUB (North Ridge Hospital), Inc.*, a Florida court of appeal recognized that the state had adhered to the doctrine for thirty years, explaining: "[A] hospital which provides emergency room services has a non-delegable duty to provide competent emergency treatment based upon an implied contract. It is therefore clear that the plaintiff could have pleaded a claim against the hospital for the emergency room doctor's negligence on a non-delegable duty theory. The imposition of a non-delegable duty to provide competent emergency room services makes sense, because a patient in an emergency room

[38] Docket No. 3:08-cv-0032 (SLG), 2012 WL 3838279, *2 (D. Alaska September 4, 2012).

[39] 743 P.2d 1376, 1384 (Alaska 1987).

[40] Id., 1385.

generally has little, if any, control over who will be the treating physician."[41]

New York has long recognized the nondelegable duty doctrine, which it has sometimes dubbed the "emergency room doctrine." Twenty-one years ago in *Citron* v. *Northern Dutchess Hospital,* the New York Supreme Court, Appellate Division, explained that hospital liability flows from patients seeking hospital services: "[A] hospital may be held vicariously liable for the acts of independent physicians if the patient enters the hospital through the emergency room and seeks treatment from the hospital, not from a particular physician . . . . In these circumstances, [a patient] could properly assume that the treating doctors and staff of the hospital were acting on behalf of the hospital . . . ."[42] (Citations omitted; internal quotation marks omitted.)

Earlier this year, a Puerto Rico court signed on as well. In *Ramirez-Ortiz* v. *Corporacion del Centro Cardiovascular de Puerto Rico y del Caribe,* the United States District Court for the District of Puerto Rico held that liability hinges on whether the patient seeks services from a particular doctor or from the hospital as an institution: "[W]hen a person goes directly to a hospital for medical treatment and the hospital 'provides' the physician who treats him [or her]," the hospital is vicariously liable for the physician's negligence because the individual seeking medical aid has entrusted his or her health to the hospital as an institution. . . . Under that framework, it makes no difference whether the attending physician is a hospital employee or not, or a physician granted a 'franchise' to offer his [or her] specialized medical services to the hospital patients, or a physician belonging to the

---

[41] 85 So. 3d 502, 505 (Fla. App. 2012).

[42] 198 App. Div. 2d 618, 620, 603 N.Y.S.2d 639 (1993), leave to appeal denied, 83 N.Y.2d 753, 634 N.E.2d 603, 612 N.Y.S.2d 107 (1994).

hospital staff and called in for consultation to treat the patient, etc."[43] (Citation omitted.)

Finally, in 2000, the South Carolina Supreme Court, in *Simmons* v. *Tuomey Regional Medical Center*, held that under the nondelegable duty doctrine hospitals are liable for emergency room physicians.[44] After surveying the law in other states and the many lesser circumstances in which it has held a duty nondelegable, the *Simmons* court declared that responsibility for emergency room care is too important for hospitals to pass off to others: "[A] person or entity entrusted with important duties in certain circumstances may not assign those duties to someone else and then expect to walk away unscathed when things go wrong. A principle that applies in cases of poorly repaired brick floors and sloppily loaded cargo certainly applies to situations in which people must entrust that most personal of things, their physical well-being, to physicians at an emergency room intimately connected with and closely controlled by a hospital."[45]

Patients going to an emergency room are usually seeking the services of the hospital as an institution. The circumstances are not the same where patients go to the hospital to meet their own physicians. Therefore, the *Simmons* court appropriately limited its holding to cases where the patient sought the services of the hospital, not a particular doctor.[46]

The *Simmons* court also held that notices do not matter. "[H]ospitals will not be allowed to escape liability by giving last-minute notice of independent-contractor practitioners through admission forms or

---

[43] Docket No. Civ. 12-2024 (FAB), 2014 WL 3940413, *2 (D.P.R. August 13, 2014).
[44] 341 S.C. 32, 533 S.E.2d 312 (2000).
[45] Id., 44.
[46] Id., 52.

emergency room signs."[47] It viewed the nondelegable duty doctrine preferable to traditional apparent agency because apparent agency would require focus on hospital representations and proof of reliance. Like this court, the *Simmons* court thought the context of an emergency room a poor environment for a reasoned exchange about liability: "[E]xpecting a patient in an emergency situation to debate or comprehend the meaning and extent of any representations by the hospital—which likely would be based on an opinion gradually formed over the years and not on any single representation—imposes an unfair and improper burden on the patient. Consequently, we believe the better solution, grounded primarily in public policy reasons we explain below, is to impose a nondelegable duty on hospitals."[48]

6

## L&M operates the emergency room and Noel sought its care

This is not a case where a patient arranged to meet his doctor at the hospital to perform some service or even to attend him in the emergency room. The parties agree and the trial testimony shows that Noel showed up for urgent treatment at the emergency room licensed to L&M unscheduled, had no say in who treated him, and was assisted by the regular doctors L&M engaged to staff the emergency room.

Noel signed a hospital form authorizing release of medical records and payment of benefits from third parties. An unsigned page the hospital says accompanied the signed authorization says that, "I understand my physicians . . . are not employees or agents of the Hospital. . . . [M]y physician(s)—not the Hospital—

---

[47] Id., 47–48.

[48] Id., 48.

are responsible for the care they provide to me while I am in the Hospital."

It is no surprise that Noel testified that when he showed up at the hospital with what he claims are stroke symptoms he did not read the statement, which was not on the page he signed and is in the middle of over a dozen single-spaced paragraphs in small type. He assumed the doctors who treated him worked for the hospital. This is consistent with what L&M itself says. Its website lists emergency services as one of its "core services."[49] It notes that, "All L+M Emergency Services physicians are board-certified in emergency medicine . . . ."[50]

7

A hospital's duty to provide adequate
emergency care is nondelegable

It does not matter whether Noel read or signed the disclosure L&M claims it presented to him. It would not matter if L&M had more disclosures or better ones. L&M is licensed to operate its emergency room. The statutes and regulations make L&M directly responsible to provide adequate care to emergency patients. By statute and common law, adequate care is care that would have been provided under the circumstances by a reasonably prudent similar provider. When physicians provide services in connection with the treatment of emergency room patients but fail to meet that standard, the hospital responsible for the emergency room is vicariously liable—liable without fault of its own—for damages flowing from the doctor's misdeeds.

This does not mean that hospital corporate entities are making individualized medical judgments. Vicarious liability means that hospitals are responsible for the

---

[49] http://www.lmhospital.org/services/emergency-medicine.aspx.
[50] Id.

negligence of the doctors who do make them. L&M says emergency room doctors are like the public defenders considered by our Supreme Court in 1975 in *Spring* v. *Constantino*—*servants* only because they can be told "when . . . to work and within what area," to serve "a requisite number of clients . . . and undergo training . . . ."[51] Otherwise, L&M says the doctors, like the lawyers in *Constantino*, are independent professionals—doctors, in the hospital's words are the only people in the emergency room with a duty of care. L&M even admits that this theory would relieve it from responsibility regardless whether the doctors were full-time L&M employees or independent contractors. The problem with this thinking is that public defender was the only person in *Constantino* with a professional duty of care set by law. Here, L&M has specific standard of care duties imposed by statute, regulation, and common law on the quality of care its emergency room provides. If it chooses to meet these standards of care by hiring independent contractors, it must take responsibility for what they do.

Responsible hospitals undoubtedly can do many things to protect themselves from vicarious liability for incompetent doctors providing services to help emergency room patients. At a minimum they can choose good doctors, train them well, monitor their past performance well, provide them adequate resources, give them good procedures to follow and act swiftly when they fall below the standards of care.

Given that hospitals choose who works in their emergency rooms, making them vicariously liable makes them less likely to skimp on resources and more likely to focus on care. At oral argument, L&M claimed that one advantage of the system it advocates is that it can save money for cash-strapped hospitals. This brings to

---

[51] 168 Conn. 563, 574, 362 A.2d 871 (1975).

mind a warning from the *Simmons* court: "Immunity fosters neglect and irresponsibility, while liability encourages the exercise of due care."[52] (Internal quotation marks omitted.)

The doctors who work in emergency rooms do not decide the number and quality of the doctors on staff, the allocation of resources to support them, or the quality controls that apply to them. Only the hospital can control these factors, and they are vital to providing adequate care. Without any responsibility for substandard work done by the doctors treating the patients, hospitals have little incentive to ensure that the doctors they appoint have the necessary skills and resources to meet the standard of care. Instead, immunity that could be granted by law or patient "consent" would give them every incentive to cut services.

The nondelegable duty of care recognized here applies when a patient goes to the emergency room for services. It does not apply when patients attend scheduled appointments at the hospital with doctors they have chosen regardless whether those appointments are at the emergency room or some other place in the hospital. It would not apply when patients' chosen physicians are summoned to the emergency room to care for them in urgent situations.

The legal duties imposed on them, the absence of bargaining power, the need for speed, and the hospitals' exclusive responsibility for choosing all of the service providers involved make it reasonable for patients to expect that the hospital is responsible for their treatment when they are in the emergency room. These factors make a hospital's duty to provide adequate emergency room care important enough to recognize as nondelegable regardless whether any other hospital duties may be delegated. This ruling says nothing about

---

[52] 341 S.C. 49.

whether the hospital may have other nondelegable duties outside the emergency context for anesthesiologists, pathologists, or other doctors who patients many times do not choose for themselves, etc. Those circumstances have to be evaluated on their own merits.

L&M has moved for a directed verdict on the question whether it would be vicariously liable for any resulting damages caused if the emergency room physician in this case breached his standard of care. In particular, L&M argues that Noel has failed to offer evidence from which a reasonable jury could conclude that the doctor was the hospital's agent or apparent agent. The hospital's nondelegable duty means it is responsible for any misdeeds by the doctor regardless whether the situation meets traditional agency rules. Therefore, on the question of vicarious liability, L&M's motion for directed verdict is denied as a matter of law. As indicated on the record, decision is reserved on the remaining motion (317.00) concerning negligence.

Superior Court, Judicial District of Windham
File No. W11D-CR13-0151132-S

