A02A2095. ANDERSON et al. v. MEDICAL CENTER, INC.
(580 SE2d 633)

PHIPPS, Judge.

Shirley and Jeffrey Anderson, as parents and next friends of their minor son Jeffrey Anderson, sued Medical Center, Inc. (the Center), seeking damages for the child's injuries that allegedly resulted from the Center's negligent prenatal care of Shirley Anderson. The Center moved for summary judgment, arguing, among other things, that the questioned medical decisions concerning Shirley Anderson's care were not made by any of its employees, but by an

independent contractor. The trial court granted that motion.[1] Because there is no evidence showing that any alleged negligence was that of the Center's employees, we affirm.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[2] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

Shirley Anderson sought prenatal care at the Columbus Health Department Clinic. An obstetrician who provided medical care there referred her to the Center for an evaluation of her pregnancy-induced hypertension (PIH). She was admitted to the Center on July 1 and discharged on July 9, 1988. On July 20, she was readmitted to the Center for the delivery of Jeffrey, who has permanent speech and learning disabilities. The Andersons' expert testified that, at some time after Shirley Anderson's July 9 discharge and before her read-mission on July 20, the unborn child suffered an asphyxiating insult that caused his disabilities. The expert claimed that the Center breached the standard of care by failing to develop and implement a plan for continued and frequent monitoring of Shirley Anderson's PIH upon her July 9 discharge.

1. One of the Center's grounds for its motion for summary judg-ment[4] was its claim that all medical decisions concerning the timing and appropriateness of Shirley Anderson's discharge from her prena-tal evaluation admission and her follow-up care were medical judg-ments made by obstetricians in private practice, who were not the Center's employees.

> We determine whether a person is an employee or an inde-pendent contractor by examining whether the employer has assumed the right to control the time, manner, and method of executing the work. The right to control the time means the employer has assumed the right to control the person's actual hours of work. The right to control the manner and method means the employer has assumed the right to tell the person how to perform all details of the job, including the tools he should use and the procedures he should follow.[5]

---

[1] Apparently, a week-long trial on the issue of liability ended in a mistrial due to jury deadlock. Afterward, the Center moved for summary judgment.

[2] OCGA § 9-11-56 (c).

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[4] See *Patrick v. Floyd Med. Center*, 255 Ga. App. 435, 444 (3) (565 SE2d 491) (2002) (a grant of summary judgment must be affirmed if it is right for any reason).

[5] (Footnotes omitted.) *Williamson v. Coastal Physician Svcs. of the Southeast*, 251 Ga. App. 667, 668 (554 SE2d 739) (2001).

The Center presented affidavit testimony of Dr. Ben Cheek, obstetrician and gynecologist, who supervised the care of the Columbus Health Department Clinic's "high risk" patients. He stated that in July 1988, the physician care available to obstetric patients presenting to the clinic was provided or supervised exclusively by obstetricians in private practice, who volunteered their medical services. As a clinic patient, Shirley Anderson at all times during her July 1-July 9 stay at the Center would have been under the care of such obstetricians, who acted as her attending obstetricians on a rotating basis. All such obstetricians were members of the medical staff of the Center, then the only hospital in Columbus offering labor and delivery services. Further, Cheek averred, the Center did not control, and had no means to control, the exercise of professional judgment by, or the availability of, the attending obstetricians. As the Andersons have presented no evidence to refute Cheek's testimony, it stands uncontroverted that those physicians were independent contractors.[6]

2. The Andersons cite *Richmond County Hosp. Auth. v. Brown*[7] for the proposition that, under the doctrine of apparent agency, a hospital may be liable for the actions of a physician who is an independent contractor when (1) the hospital holds out the doctor as its agent, and (2) the patient's justifiable reliance on that holding out leads to injury.[8] But pretermitting whether the Center held out to Shirley Anderson that the attending physicians were its agents, the Andersons neither claim nor cite any evidence in support of a claim that Shirley Anderson relied on any representation and that such reliance led to injury.[9] Consequently, they have failed to show that the Center is liable based upon acts of the attending physicians.

3. Next, the Andersons claim that there was evidence that, in addition to the attending obstetricians, certain of the Center's resident physicians played some role in Shirley Anderson's care. The Center counters that its residents worked only under the supervision of an attending obstetrician and lacked authority "to discharge patients or make significant care decisions." It cites Cheek's testimony that while residents participated in Shirley Anderson's prenatal care, they "could not act as attending physicians" and that "[a]ll orders written or given by the Medical Center's residents would have been entered at the direction of the attending obstetricians, or with the attending obstetrician's approval." In addition, the Center cites deposition testimony of Dr. Sylvester McRae, an attending physician,

---

[6] See id. at 670.

[7] 257 Ga. 507, 508-509 (361 SE2d 164) (1987).

[8] See *North Ga. Med. Center v. Stokes*, 238 Ga. App. 60 (517 SE2d 93) (1999).

[9] Compare id. at 60-61.

who stated that "there was always an attending or senior physician[ ] who supervised [the residents]."

The Center also points to Shirley Anderson's discharge summary, which noted that Dr. Charles Stamey, one of the obstetricians in private practice working through the clinic, had suggested to Dr. Tisdale, a resident, that if further tests revealed certain results, Shirley Anderson could be discharged with "follow-up in the High Risk Clinic." The summary stated that the tests had revealed those results, that she was being discharged, and that "[s]he is to follow-up in the High Risk Clinic on 7/14/88 to be re-evaluated by Dr. Cheek." The Center thus pierced the Andersons' pleadings by introducing evidence that the attending physicians, rather than the Center's residents, bore the responsibility of implementing follow-up of Shirley Anderson's condition.

The Andersons respond by pointing to their medical expert's testimony that if a hospital commits to caring for a certain type of patient, it should "provide the correct physician" or "hire the correct physicians," that a hospital has to "have the right people," and that "[n]o prudent physician" would have sent Shirley Anderson home without an adequate plan for monitoring her condition.

"[W]hen a defendant pierces the plaintiff's allegations, it is incumbent upon the plaintiff to point to some evidence of record that creates an issue of fact."[10] The Andersons have cited no evidence that the Center's residents bore responsibility for any act or omission alleged. Even giving the Andersons the benefit of favorable inferences, their expert's testimony cannot reasonably be understood to say that the residents had the responsibility for providing follow-up care. Thus, the Andersons have failed to show that any alleged negligence was that of the Center's employees.

4. Finally, in their reply brief, the Andersons point to their medical expert's testimony and argue that the Center cannot escape direct liability because it failed to hire "the right people," asserting that the Center's residents were unqualified to perform certain tasks. But because the Andersons have failed to present evidence that the residents committed the negligence alleged in this case, the Center's practices in hiring residents are not at issue.

The Center was entitled to summary judgment.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

---

[10] (Footnote omitted.) *O'Connell v. Cora Bett Thomas Realty*, 254 Ga. App. 311, 313 (1) (563 SE2d 167) (2002).

DECIDED MARCH 26, 2003.

*Walter L. Fortson*, for appellants.
*Rothschild & Morgan, Jerome M. Rothschild*, for appellee.