BLACKBURN, Presiding Judge.
 

 In this medical malpractice action, Joyce Blackmon (acting in three representative capacities) appeals in Case No. A07A1840 the grant of summary judgment to hospital owner Tenet Healthsystem Spalding, Inc., which order was based on the trial court's finding that Tenet was not liable for the actions of Dr. Henry Webb, who committed the alleged malpractice that purportedly resulted in the death of Blackmon's daughter. Dr. Webb and his physician group (ACS Primary Care Physicians - Southeast, P.C. ("ACS Physicians")) cross-appeal in Case No. A07A2283, arguing that Blackmon lacked standing to bring the wrongful death portion of this action. Tenet cross-appeals on the same ground in Case No. A07A2284 and on the additional ground that the trial court erred in failing to grant its motion to transfer venue to Spalding County. We hold that some evidence showed that Dr. Webb was an employee of Tenet, and we therefore reverse in part and affirm in part the grant of summary judgment to Tenet. We further hold that the state court below had no equitable powers to allow Blackmon to bring this action, and we therefore reverse the denial of partial summary judgment to the defendants on the wrongful death claim. Finally, finding no abuse of discretion, we affirm the order denying the transfer of venue.
 

 Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a
 

 **138
 

 matter of law. OCGA § 9-11-56(c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.
 
 Matjoulis v. Integon Gen. Ins. Corp.
 

 [1]
 

 So viewed, the evidence shows that on April 22, 2003, Blackmon's adult daughter collapsed at work and while in a semi-conscious state was rushed by emergency personnel to Tenet's hospital only blocks away, where Dr. Webb was serving as an emergency physician. Dr. Webb twice attempted unsuccessfully to insert a central line into the
 
 *337
 
 daughter's subclavian vein, and in the process unknowingly lacerated that vein. The untreated laceration caused blood to flow into the daughter's lungs over the next several hours, which led to her death. She was survived by her incarcerated husband and by their female child, who became the ward of grandmother Blackmon.
 

 Acting as legal guardian of the granddaughter, as personal representative of the deceased daughter, and as administratrix of the daughter's estate, Blackmon brought a medical malpractice and wrongful death action in Fulton County State Court against Dr. Webb and his physician group, and against Tenet as owner of the hospital. Following substantial discovery, all three defendants moved for partial summary judgment on the wrongful death claim, arguing that because the decedent's husband still lived in Georgia and could bring the claim,
 
 [2]
 
 Blackmon lacked the authority to bring the action. Purporting to exercise equitable powers, the state court ordered that Blackmon as guardian of the granddaughter could bring the wrongful death action and accordingly denied the motion for partial summary judgment.
 

 Tenet also moved the trial court to transfer the venue of the case to Spalding County, which is where the hospital was located and where most of the witnesses lived. The court weighed the various factors under OCGA § 9-10-31.1(a) and denied the motion.
 

 Tenet separately moved for complete summary judgment on the ground that Dr. Webb was an independent contractor, that the elements of apparent authority were not present, and that therefore his alleged negligence could not be attributed to Tenet. The trial court agreed and granted Tenet complete summary judgment, which Blackmon appeals in Case No. A07A1840. Dr. Webb and his physician group cross-appeal the partial summary judgment order in Case
 

 **139
 

 No. A07A2283. Tenet cross-appeals the partial summary judgment and venue orders in Case No. A07A2284.
 

 Case No. A07A1840
 

 1. Blackmon argues that the trial court erred in finding as a matter of law that under the undisputed facts, Dr. Webb was an independent contractor, which was the primary basis for the court's granting complete summary judgment to Tenet. We agree with Blackmon that some evidence shows that Dr. Webb was an employee of Tenet, and we therefore reverse this portion of the summary judgment order.
 

 A hospital is liable for the actions of a physician if the evidence shows that the physician was an employee of the hospital and not an independent contractor.
 
 Cooper v. Binion.
 

 [3]
 
 In ascertaining whether the relationship between a hospital and an emergency room physician is employer-employee or employer-independent contractor, we consider whether the hospital, "under the contract either oral or written, assumes the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract."
 
 Hodges v. Doctors Hosp.
 

 [4]
 

 Having struggled with this standard for many years in cases in which the contract claimed to establish an independent contractor relationship with the emergency room physician but nevertheless bore marks of control by the hospital, this Court, in 1996 in
 
 Lee v. Satilla Health Svcs.,
 

 [5]
 
 adopted an 11-factor test gleaned from an earlier federal decision
 
 [6]
 
 to serve as a guideline in making this determination; under the facts of
 
 Lee,
 
 we held that summary judgment to the hospital was improper. In 2004, we applied those factors again to an emergency room physician in
 
 Cooper,
 
 supra, 266 Ga.App. at
 
 *338
 
 710-713(1),
 
 598 S.E.2d 6
 
 , again concluding that under the facts as presented, summary judgment to the hospital was improper. Both cases emphasized that as the question was one of essence, not nomenclature, the labeling of the physician as an independent contractor in his contract with the hospital was not dispositive, as other factors could negate the label. Id. at 710(1),
 
 598 S.E.2d 6
 
 ;
 
 Lee,
 
 supra, 220 Ga.App. at 886(1),
 
 470 S.E.2d 461
 
 .
 
 [7]
 

 **140
 

 We need not discuss each and every one of the eleven factors here, as a discussion of five of those factors shows that some evidence indicated an employer-employee relationship between Dr. Webb and Tenet. This created a fact issue and rendered the entry of summary judgment in favor of Tenet erroneous.
 

 At the outset, it is important to recognize that there are two contracts at issue here. First, Tenet contracted with Dr. Webb's physician group to have that group supply the hospital with emergency physician services around the clock.
 
 [8]
 
 Second, the physician group separately contracted with Dr. Webb to have him serve as one of those providing emergency physician services at Tenet's hospital.
 

 (a)
 
 The employer's right to make additional plans and specifications; to impose its will in lieu of the contract's provisions; and to direct the employee's work step by step.
 
 In this case, consideration of the first factor alone reflects a clearly disputed issue of fact as to whether the hospital assumed the right to control the manner and method of Dr. Webb's work. Where the hospital has the right to make additional plans and specifications, to impose its will in lieu of the contract's provisions, or to direct the doctor's work step by step, then such weighs heavily in showing the doctor was an employee of the hospital as opposed to an independent contractor.
 
 Lee,
 
 supra, 220 Ga.App. at 886(1),
 
 470 S.E.2d 461
 
 ; see
 
 Cooper,
 
 supra, 266 Ga. App. at 710-711(1)(a),
 
 598 S.E.2d 6
 
 . Thus, when the evidence shows that the physician "could not refuse an order to do `such and such' from the hospital administrator,"
 
 Lee,
 
 supra, 220 Ga.App. at 886(1),
 
 470 S.E.2d 461
 
 , or that the contract contained a provision that the physician "must perform related work as required and other duties assigned by" an executive of the hospital,
 
 Goins v. Tucker,
 

 [9]
 
 then an employer-employee relationship would appear to be established.
 

 Here, the Tenet/Group contract, in which ACS Physicians covenanted to ensure that each of its physicians complied with that contract, provided that in addition to providing emergency room services for Tenet hospital patients, "Physicians shall perform such other duties as may from time to time be requested by" the hospital, the hospital's governing board, the hospital's medical staff, and/or the hospital's CEO. Dr. Webb in his contract with ACS Physicians agreed to render medical services in accordance with the requests of the
 

 **141
 

 hospital and further agreed that ACS Physicians could terminate him if his actions impaired or adversely affected the relationship between ACS Physicians and Tenet. Thus, as Dr. Webb under these contracts was bound to perform whatever work or duties were requested from time to time by Tenet hospital executives and staff, a jury could find that Tenet controlled Dr. Webb's manner and method of performing his work, despite the more general contract provisions that Dr. Webb and ACS Physicians would exercise professional judgment in providing
 
 *339
 
 medical services without direction or control from Tenet.
 

 (b)
 
 The supplier of the equipment.
 
 It is undisputed that Tenet provided the facility and equipment with which Dr. Webb performed his job. "This would suggest that Dr. [Webb] was an employee."
 
 Cooper,
 

 supra,
 
 266 Ga.App. at 711(1)(d),
 
 598 S.E.2d 6
 
 ;
 
 Lee,
 
 supra, 220 Ga.App. at 886-887(1),
 
 470 S.E.2d 461
 
 . We recognize (as did the legislature) that this factor is increasingly unrealistic in today's world of emergency medicine, in which the hospital as a practical matter must provide the equipment and supplies for emergency room physicians. Thus, we hold that this factor alone would not preclude summary judgment; however, it does continue as a consideration for causes of action arising before the February 16, 2005 effective date of OCGA § 51-2-5.1(g)(2).
 

 (c)
 
 The hospital's right to control the physician's time.
 
 "[I]f the hospital simply retains the right to control the physician's hours (without actually exercising that right), such is sufficient to show control over the physician's time."
 
 Cooper,
 

 supra,
 
 266 Ga.App. at 712(1)(f),
 
 598 S.E.2d 6
 
 . Here, the Tenet/Group contract obligated ACS Physicians, on or before the first day of each calendar month, to provide the hospital's CEO with the monthly schedule of physicians assigned to provide the coverage in the emergency room during the next calendar month and further
 
 required the CEO's approval of that schedule
 
 before such was posted. Dr. Webb's contract with ACS Physicians obligated him to render medical services at times requested by ACS in accordance with requests of the hospital. These provisions give rise to at least a jury question as to whether Tenet controlled the time of Dr. Webb's work. See generally
 
 Brown v. Coastal Emergency Svcs.
 

 [10]
 
 ("a hospital may subject itself to vicarious liability for the malpractice of its emergency room physicians merely by assuming control over the time of their performance . . ."). See also
 
 Cooper,
 

 supra,
 
 266 Ga.App. at 712(1)(f),
 
 598 S.E.2d 6
 
 .
 

 (d)
 
 Physician spends all working hours at hospital.
 
 "A physician who spends all his working hours at the hospital and maintains no separate practice more likely appears to
 

 **142
 

 be an employee of the hospital. Here Dr. [Webb] spent all his working hours at the hospital and maintained no separate practice, and therefore this factor weighs in favor of an employee-employer relationship."
 
 Cooper,
 
 supra, 266 Ga.App. at 713(1)(i),
 
 598 S.E.2d 6
 
 . Once again, we recognize (as did the legislature) the practical problems such a factor creates in today's world of emergency medicine, in which emergency room physicians routinely spend all their working hours at the hospital. Thus, this factor would also not alone (or in conjunction merely with the factor of the hospital's supplying all the equipment) preclude summary judgment. Cf. OCGA § 51-2-5.1(g)(2).
 

 (e)
 
 The method of billing the patients.
 
 Although ACS Physicians separately billed patients for the services of its emergency room physicians, the rates it was allowed to charge had to be approved by Tenet under the Tenet/Group contract. Giving Tenet the "power to approve the physician rates charged . . . would appear to be an employee-employer relationship."
 
 Cooper,
 
 supra, 266 Ga.App. at 713(1)(j),
 
 598 S.E.2d 6
 
 . See
 
 Doctors Hosp. of Augusta v. Bonner
 

 [11]
 
 ("Hospital had the right to approve the rates charged . . .").
 

 Despite the substantial evidence in other respects that Dr. Webb was an independent contractor, the above evidence on these five factors precluded the entry of summary judgment to Tenet on this question. Accordingly, we reverse that portion of the summary judgment order in which the trial court held as a matter of law that Dr. Webb was an independent contractor.
 

 2. Blackmon also appeals that portion of the court's order in which it found as a matter of law that no evidence established that Dr. Webb acted with apparent authority from Tenet. As Blackmon presented no evidence that her daughter relied on any representations from Tenet, we must affirm this portion of the summary judgment order.
 

 *340
 
 "[U]nder the doctrine of apparent agency, a hospital may be liable for the actions of a physician who is an independent contractor when (1) the hospital holds out the doctor as its agent, and (2) the patient's justifiable reliance on that holding out leads to injury."
 
 Anderson v. Med. Center.
 

 [12]
 
 Thus, even assuming that Tenet here held Dr. Webb out as an agent, absent evidence showing that the patient (here, Blackmon's daughter) justifiably relied on Tenet's holding out Dr. Webb as its agent, summary judgment on this issue was mandated.
 

 **143
 

 Id.
 
 Compare
 
 Abdul-Majeed v. Emory Univ. Hosp.
 

 [13]
 
 (plaintiff presented testimony that she sought treatment for her deceased husband at Emory because she believed Emory would provide competent personnel to attend to her husband; summary judgment denied). Here, pretermitting whether Tenet held out to Blackmon's daughter (or to Blackmon for that matter) that Dr. Webb was an agent, Blackmon has presented no competent evidence that (i) her daughter (or anyone acting on her daughter's behalf) relied on any such representation in accepting services from Dr. Webb or (ii) that such led to her daughter's injuries and death. See
 
 Anderson,
 
 supra, 260 Ga.App. at 551(2),
 
 580 S.E.2d 633
 
 . Rather, the evidence only shows that emergency personnel brought the semi-conscious daughter to Tenet's hospital because it was the emergency facility closest to the daughter's workplace where she collapsed. No reliance on any representation by the hospital is shown. See generally
 
 Richmond County Hosp. Auth. v. Brown
 

 [14]
 
 (reliance must be shown).
 

 Accordingly, we affirm that portion of the order granting summary judgment to Tenet on the question of apparent authority.
 

 3. Blackmon argues that in its summary judgment order, the trial court erroneously refused to recognize as a basis for liability the Medicare regulations, which require that hospitals, to be eligible to participate in Medicare, comply with the following: "[T]he governing body [of the hospital] must be responsible for services furnished in the hospital whether or not they are furnished under contracts. . . . The governing body must ensure that the services performed under a contract are provided in a safe and effective manner."
 
 42 C.F.R. § 482.12
 
 (e). Blackmon, however, misreads this regulation. It does not purport to impose state tort liability on hospitals for the negligence of their independent contractors; rather, it simply outlines that with which the hospitals must comply to receive Medicare. This state tort case is not about whether Tenet's hospital is complying with all necessary regulations so as to be eligible for Medicare reimbursement; rather, it is about whether under the detailed strictures of Georgia law concerning agency and the particular facts of this case, the hospital is liable for the actions of Dr. Webb. The two issues are wholly different and do not intersect for purposes of determining liability in this case.
 

 4. Finally, Blackmon complains that the court abused its discretion in refusing to postpone ruling on the summary judgment motions until she had an opportunity to perform further discovery on the
 

 **144
 

 agency issue. Since the court had already extended discovery four times before considering the summary judgment motions, we cannot say that the court abused its discretion in deciding the summary judgment motions without further extensions. See
 
 Unified Svcs. v. Home Ins. Co.
 

 [15]
 
 (having extended discovery three times, the court did not abuse its discretion in refusing to extend it a fourth time before deciding a summary judgment motion).
 

 Case No. A07A2283
 

 5. Dr. Webb and ACS Physicians argue in Case No. A07A2283 (and Tenet argues in Case No. A07A2284) that the trial court erred in denying their motions for partial summary judgment where the undisputed evidence showed that Blackmon was not
 
 *341
 
 the proper party to bring the wrongful death action. We agree. Although a superior court would possess the equitable powers necessary to declare Blackmon the proper party (assuming the facts were appropriate for such), Blackmon's strategic choice to pursue this matter instead in a state court foreclosed Blackmon from even asking the trial court to consider whether the equities here allowed Blackmon to overcome the strict provisions of the OCGA § 51-4-2, which requires that the surviving spouse bring the wrongful death action.
 

 Because there is no common law right to pursue a claim for wrongful death, wrongful death claims in Georgia are only permitted under the auspices of the Wrongful Death Act (OCGA § 51-4-1 et seq.).
 
 Tolbert v. Maner.
 

 [16]
 
 Being in derogation of common law, this Act must be limited in strict accordance with its statutory language, which must be followed literally.
 
 Id.
 

 OCGA § 51-4-2(a) reads: "The surviving spouse or, if there is no surviving spouse, a child or children, either minor or sui juris, may recover for the homicide of the spouse or parent the full value of the life of the decedent, as shown by the evidence." "Thus, under subsection (a), wrongful death claims may be brought by only two categories of plaintiffs - the decedent's surviving spouse and, if there is no surviving spouse, the decedent's children."
 
 Tolbert,
 
 supra, 271 Ga. at 208(2),
 
 518 S.E.2d 423
 
 .
 
 [17]
 
 OCGA § 51-4-2(d)(1) provides further: "Any amount recovered under subsection (a) of this Code section shall be equally divided, share and share alike, among the surviving spouse and the children per capita. . . ."
 

 **145
 

 Based on this statutory language, the Supreme Court of Georgia in
 
 Mack v. Moore
 

 [18]
 
 held that "the statute confers exclusive standing upon the surviving spouse," who is required to share the proceeds with the children and who therefore acts as a representative of the children.
 
 Id.
 
 The failure of the spouse to act prudently in asserting, prosecuting, and settling the claim could subject the spouse to liability for breach of duty as a representative. Id. at 138-139,
 
 345 S.E.2d 338
 
 . Accordingly,
 
 Mack
 
 affirmed the trial court's dismissal of a party, who as the decedent's child attempted to bring a wrongful death action despite the survival of the decedent's spouse.
 

 Citing
 
 Mack
 
 with approval,
 
 O'Kelley v. Hosp. Auth. of Gwinnett County
 

 [19]
 
 affirmed summary judgment granted to the hospital in a wrongful death action brought by the children of the decedent, reasoning that the surviving spouse had exclusive standing to bring the action. See
 
 Star Jewelers, Inc. v. Durham
 

 [20]
 
 ("[t]here is no provision for children of a deceased father to institute a wrongful death action while the widow is still in life");
 
 Lawrence v. Whittle
 

 [21]
 
 ("the children have no right to sue [for wrongful death of a father] so long as the widow is in life, and that is so even if the widow's refusal to bring the suit is fraudulent") (citation omitted).
 

 In 1991, however, the Supreme Court of Georgia carved out a limited exception to this rule. In
 
 Brown v. Liberty Oil etc. Corp.,
 

 [22]
 
 a mother was killed in an automobile accident with a truck; filing a wrongful death action in superior court, the surviving children argued that they had standing to bring the action because the father had abandoned them, could not be located, and would not, in any event, pursue the claim. Citing OCGA
 

 *342
 
 § 23-1-3 and OCGA § 23-4-20 ("[a]ny person who may not bring an action at law may complain in equity . . ."), Brown observed that the Georgia Constitution "vests general equitable powers in the superior court."
 
 Brown,
 
 supra, 261 Ga. at 215-216(2)(b),
 
 403 S.E.2d 806
 
 . See Ga. Const. of 1983, Art. VI, Sec. IV, Par. I. Based on those equitable powers,
 
 Brown
 
 concluded:
 

 We hold that the factual circumstances of this case demand the exercise of those powers to preserve the rights of the minor children. The trial court should have allowed these minors, who have
 
 no
 
 remedy at law, to maintain an action for
 

 **146
 

 the wrongful death of their mother. Any contrary holding in
 
 Mack,
 
 supra, and in
 
 O'Kelley,
 
 supra, is overruled.
 

 (Emphasis in original.)
 
 Brown,
 
 supra, 261 Ga. at 216(2)(b),
 
 403 S.E.2d 806
 
 .
 

 Accordingly, the general rule still applies: the surviving spouse has exclusive standing to bring a wrongful death action. The only exception to this rule arises "[i]n rare circumstances" (
 
 King v. Goodwin
 

 [23]
 
 ) in the limited context of a superior court exercising its equitable powers to allow the surviving children with no remedy at law under certain circumstances to pursue a wrongful death claim. Thus, in
 
 Emory Univ. v. Dorsey,
 

 [24]
 
 we found "compelling reasons for the superior court's exercise of equitable powers" so as to allow a surviving child to bring a wrongful death action where the surviving spouse "left the State shortly after the deceased's death with no intention of pursuing a wrongful death action. There was no blood or legal relationship connecting [the surviving parent and the surviving child], and [the surviving parent] left the child . . . without an adequate remedy at law."
 

 Similarly, in
 
 Belluso v. Tant,
 

 [25]
 
 we found "compelling reasons for the superior court to exercise its equitable powers" to allow a surviving parent to bring a wrongful death claim in superior court under OCGA § 19-7-1(c) when the surviving spouse was the alleged wrongdoer who had caused the death of the decedent (and therefore could not bring the action, as such would allow him to benefit from his own wrongdoing) and there were no surviving children.
 

 In each of these cases, we and the Supreme Court have been careful to specify that this exception applies in the context of a superior court exercising its constitutionally-granted powers of equity. Of course, unlike superior courts, state courts have no such equitable powers. See
 
 Davis v. Davis;
 

 [26]
 

 Forest Villas Condo. Assn. v. Camerio.
 

 [27]
 
 See generally Ga. Const. of 1983, Art. VI, Sec. IV, Par. I; OCGA § 15-7-4(a). Thus, the state court here erred in purporting to exercise such powers so as to apply this exception. Because the state court had no equitable powers to apply the exception, the court was required to apply the general rule and to hold that since the surviving spouse had exclusive standing to bring the wrongful death claim,
 

 **147
 

 defendants' motion for partial summary judgment on the wrongful death claim was meritorious.
 

 Citing Uniform Superior Court Rule (USCR) 19.1, Blackmon argues on appeal that we as an appellate court should transfer the case to superior court. But such lower court rules do not govern this Court's procedures, nor do they purport to. And as this issue or request was not raised below, we will not now consider it on appeal. See
 
 Hadlock v. Anderson.
 

 [28]
 

 Moreover, even if we were to apply USCR 19.1, it only provides that "a timely motion in any pending civil action or proceeding (1) by any party, that jurisdiction is lacking or that venue is improper, or (2) by the court, sua sponte, that subject matter jurisdiction is lacking, shall be treated as a
 
 *343
 
 motion to transfer the action to another court, whether in the same or another county of this state." No party filed a motion that jurisdiction was lacking in the state court or that venue was improper,
 
 [29]
 
 nor was there any motion or indication from the trial court sua sponte that subject matter jurisdiction was lacking. The pending partial summary judgment motions argued that Blackmon lacked standing in any of her capacities to bring the wrongful death action, not that the state court lacked subject matter jurisdiction over the wrongful death action. Indeed, state courts clearly have subject matter jurisdiction over wrongful death actions. See OCGA § 15-7-4(a)(2). See, e.g.,
 
 Anderson v. Atlanta Committee for the Olympic Games
 

 [30]
 
 (wrongful death action in Fulton County State Court). Thus, the prerequisites for applying the transfer provisions of USCR 19.1 are not present.
 

 Accordingly, as Blackmon lacked standing to bring the wrongful death claim, we reverse the trial court's denial of defendants' motions for partial summary judgment on the wrongful death claim.
 

 Case No. A07A2284
 

 6. Beyond the denial of its partial summary judgment motion discussed in Division 5 above, Tenet argues in Case No. A07A2284 that the trial court erred in denying its motion to transfer venue under OCGA § 9-10-31.1. Specifically, Tenet contends that because (i) the alleged malpractice took place at a hospital located in Spalding County, (ii) most witnesses and parties (including the plaintiff) live in Spalding County, and (iii) the locality of the hospital gives the local
 

 **148
 

 community in Spalding County an interest in deciding the case, the trial court abused its discretion in denying the motion to transfer. Since some evidence supported the trial court's exercise of discretion in this regard, we discern no abuse and therefore affirm.
 

 OCGA § 9-10-31.1(a) provides in part:
 

 In determining whether to grant a motion to dismiss an action or to transfer venue under the doctrine of forum non conveniens, the court shall give consideration to the following factors:
 

 (1) Relative ease of access to sources of proof;
 

 (2) Availability and cost of compulsory process for attendance of unwilling witnesses;
 

 (3) Possibility of viewing of the premises, if viewing would be appropriate to the action;
 

 (4) Unnecessary expense or trouble to the defendant not necessary to the plaintiff's own right to pursue his or her remedy;
 

 (5) Administrative difficulties for the forum courts;
 

 (6) Existence of local interests in deciding the case locally; and
 

 (7) The traditional deference given to a plaintiff's choice of forum.
 

 As movant below, Tenet bore the burden of showing that these factors supported the transfer.
 
 R.J. Taylor Mem. Hosp. v. Beck.
 

 [31]
 
 Tenet's "burden on appeal is to demonstrate an abuse of the trial court's discretion in refusing to transfer the case."
 
 Id.
 

 Here, substantial evidence supported the trial court's conclusion that Tenet failed to carry its burden. Dr. Webb, the primary actor in the allegations of negligence, resides in Fulton County; plaintiff's expert witnesses are from out-of-state and will be flying into the Atlanta airport located partially in Fulton County; all attorneys representing the parties are located in Fulton County; Fulton County is not a significant distance from Spalding County; "[m]oreover, there is no demonstration by the record that resort to compulsory process was necessary because of the current venue, that there is a need to view the premises at issue, or that the hospital is unnecessarily inconvenienced by litigating
 
 *344
 
 the matter in [Fulton] County."
 
 Beck,
 
 supra, 280 Ga. at 663,
 
 631 S.E.2d 684
 
 .
 

 Finally, similar to
 
 Beck,
 

 **149
 

 The hospital urges that public policy considerations warrant a judicial preference for venue in medical malpractice actions to be in the county where the subject medical care took place. But OCGA § 9-10-31.1(a) does not single out medical malpractice actions for different consideration or treatment. Also, inasmuch as the hospital has acknowledged that some of the defendants in this case do reside and practice in [Fulton] County, and that [Fulton and Spalding] Counties are not at great distance from one another, it is difficult to accept the assertions that what is at issue affects the receipt of medical care solely in [Spalding] County or that there is no local interest in deciding the case in [Fulton] County. Furthermore, the [Fulton] County court did not find any administrative difficulties. . . . Finally, but no less significantly, and as expressly set forth in the statute, there is the traditional deference given to the plaintiff's choice of forum, which in this case, is [Fulton] County.
 

 Id.
 

 Because some evidence supported the trial court's decision to deny the motion to transfer venue, we can discern no abuse of discretion and therefore affirm the court's ruling.
 

 In summary, in Case No. A07A1840, we reverse the trial court's summary judgment to Tenet to the extent it held (i) Dr. Webb was an independent contractor as a matter of law and (ii) therefore Tenet was not liable for his actions. We otherwise affirm the trial court's summary judgment order to Tenet, including the court's rulings that (i) Blackmon failed to prove the elements of "apparent authority" as a basis for liability, (ii) Medicare regulations did not establish Tenet's liability for Dr. Webb's actions, and (iii) Blackmon was not entitled to additional time for discovery before the court ruled on the summary judgment motions. In Case Nos. A07A2283 and A07A2284, we reverse the court's ruling denying the defendants' motions for partial summary judgment on the wrongful death claim and direct the trial court on remand to enter partial summary judgment on this claim. In Case No. A07A2284, we affirm the trial court's order denying Tenet's motion to transfer venue.
 

 Judgment affirmed in part and reversed in part in Case No. A07A1840. Judgment reversed in Case No. A07A2283. Judgments affirmed in part and reversed in part in Case No. A07A2284.
 

 RUFFIN and BERNES, JJ., concur.
 

 Matjoulis v. Integon Gen. Ins. Corp.,
 

 226 Ga. App. 459
 
 (1),
 
 486 S.E.2d 684
 
 (1997).
 

 Prisoners may pursue civil causes of action. See, e.g.,
 
 Van Alstine v. Merritt,
 

 222 Ga.App. 734
 
 ,
 
 476 S.E.2d 6
 
 (1996).
 

 Cooper v. Binion,
 

 266 Ga.App. 709
 
 , 710(1),
 
 598 S.E.2d 6
 
 (2004).
 

 Hodges v. Doctors Hosp.,
 

 141 Ga.App. 649
 
 , 651(2),
 
 234 S.E.2d 116
 
 (1977).
 

 Lee v. Satilla Health Svcs.,
 

 220 Ga.App. 885
 
 , 886-887(1),
 
 470 S.E.2d 461
 
 (1996).
 

 Harris v. City of Chattanooga,
 

 507 F.Supp. 365
 
 (N.D.Ga.1980).
 

 We note that in 2005, the Georgia legislature enacted OCGA § 51-2-5.1(f) and (g), which effectively superseded
 
 Lee
 
 and
 
 Cooper
 
 by allowing the language of the contract to control and, where a contract was absent, unclear or ambiguous, by announcing new factors and by eliminating many of the old 11 factors in making this determination. The legislature specified, however, that this new Code section would only apply to causes of action arising on or after February 16, 2005. Ga. L.2005, p. 1, § 15(b). The cause of action here arose on April 22, 2003, and is therefore subject to the
 
 Lee
 
 and
 
 Cooper
 
 factors.
 

 The original physician group was succeeded by ACS Physicians and assigned its contract with Tenet to ACS Physicians.
 

 Goins v. Tucker,
 

 227 Ga.App. 524
 
 , 528(4),
 
 489 S.E.2d 857
 
 (1997) (physical precedent only), abrogated on other grounds,
 
 Lee v. State Farm Mut. Ins. Co.,
 

 272 Ga. 583
 
 , 588(III),
 
 533 S.E.2d 82
 
 (2000).
 

 Brown v. Coastal Emergency Svcs.,
 

 181 Ga. App. 893
 
 , 896(2),
 
 354 S.E.2d 632
 
 (1987).
 

 Doctors Hosp. of Augusta v. Bonner,
 

 195 Ga. App. 152
 
 , 162(6)(a),
 
 392 S.E.2d 897
 
 (1990).
 

 Anderson v. Med. Center,
 

 260 Ga.App. 549
 
 , 551(2),
 
 580 S.E.2d 633
 
 (2003).
 

 Abdul-Majeed v. Emory Univ. Hosp.,
 

 213 Ga. App. 421
 
 , 423-424(1),
 
 445 S.E.2d 270
 
 (1994).
 

 Richmond County Hosp. Auth. v. Brown,
 

 257 Ga. 507
 
 , 508-509,
 
 361 S.E.2d 164
 
 (1987).
 

 Unified Svcs. v. Home Ins. Co.,
 

 218 Ga.App. 85
 
 , 86(3),
 
 460 S.E.2d 545
 
 (1995).
 

 Tolbert v. Maner,
 

 271 Ga. 207
 
 , 208(1),
 
 518 S.E.2d 423
 
 (1999).
 

 A third category-the surviving parents-is addressed in OCGA § 19-7-1(c). A fourth category - the decedent's estate-is addressed in OCGA § 51-4-5.
 

 Mack v. Moore,
 

 256 Ga. 138
 
 ,
 
 345 S.E.2d 338
 
 (1986), overruled in part,
 
 Brown v. Liberty Oil etc. Corp.,
 

 261 Ga. 214
 
 , 216(2)(b),
 
 403 S.E.2d 806
 
 (1991).
 

 O'Kelley v. Hosp. Auth. of Gwinnett County,
 

 256 Ga. 373
 
 , 373-374,
 
 349 S.E.2d 382
 
 (1986), overruled in part,
 
 Brown v. Liberty Oil etc. Corp.,
 
 supra,
 
 261 Ga. at 216
 
 (2)(b),
 
 403 S.E.2d 806
 
 (1991).
 

 Star Jewelers, Inc. v. Durham,
 

 147 Ga.App. 68
 
 , 71(2),
 
 248 S.E.2d 51
 
 (1978).
 

 Lawrence v. Whittle,
 

 146 Ga.App. 686
 
 , 687(3),
 
 247 S.E.2d 212
 
 (1978).
 

 Brown v. Liberty Oil etc. Corp.,
 

 261 Ga. 214
 
 ,
 
 403 S.E.2d 806
 
 (1991).
 

 King v. Goodwin,
 

 277 Ga.App. 188
 
 , 189,
 
 626 S.E.2d 165
 
 (2006).
 

 Emory Univ. v. Dorsey,
 

 207 Ga.App. 808
 
 , 810(2),
 
 429 S.E.2d 307
 
 (1993).
 

 Belluso v. Tant,
 

 258 Ga.App. 453
 
 , 455-456,
 
 574 S.E.2d 595
 
 (2002).
 

 Davis v. Davis,
 

 220 Ga.App. 745
 
 , 746,
 
 470 S.E.2d 268
 
 (1996).
 

 Forest Villas Cond. Assn. v. Camerio,
 

 205 Ga. App. 617
 
 , 619(2),
 
 422 S.E.2d 884
 
 (1992).
 

 Hadlock v. Anderson,
 

 246 Ga.App. 291
 
 , 295(2),
 
 540 S.E.2d 282
 
 (2000).
 

 The only motion on venue did not argue that venue was improper but merely sought a transfer under the doctrine of forum non conveniens. See OCGA § 9-10-31.1.
 

 Anderson v. Atlanta Committee for the Olympic Games,
 

 273 Ga. 113
 
 ,
 
 537 S.E.2d 345
 
 (2000).
 

 R.J. Taylor Mem. Hosp. v. Beck,
 

 280 Ga. 660
 
 , 662(3),
 
 631 S.E.2d 684
 
 (2006).